No. 89-05

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989


DAVE JOHNSON,

    Plaintiff and Respondent,

-vs-

WARREN A. McMILLAN,

    Defendant and Appellant.


APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John P. Atkins; Bryan & Atkins, Bozeman, Montana

    For Respondent:

        H. A. Bolinger, Bozeman, Montana


Submitted on Briefs: June 16, 1989

Decided: August 11, 1989

Filed:

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from the District Court of the Eighteenth Judicial District, Gallatin County, involves a dispute over public use of a road across appellant McMillan's property. The District Court permanently enjoined McMillan from interfering with use of the road holding that the road constituted a public way. Respondent Johnson had requested the relief granted by the lower court arguing that the road was a public way by virtue of prescriptive use from approximately 1895 to 1985. We affirm.

Timberline road follows Timberline Creek up several miles from the Jackson Creek Interchange on Interstate 90. The road is on an old railroad bed built by the Northern Pacific Railway in the early 1890's. The rail line formerly connected Northern Pacific's main line to the Timberline coal mining camp. The camp flourished during most of the 1880's, but died out in the early 1890's. In 1912, the rail was removed from the bed.

Testimony at trial documented public use of the old railroad bed as a road across what is today McMillan's property in the late 1930's. Testimony also documented public use of the road from the early 1950's to 1976, when McMillan purchased the land. Following McMillan's purchase of the property, witnesses testified that public use of the road continued up until McMillan placed a locked gate on the road in 1985.

During the period from the early 1950's to the present, various unlocked gates have been installed and in operation on the road. However, the gates were erected to keep cattle from roaming rather than to deny public access. Except for McMillan's locked gate, there is no evidence that any other

2

landowner has attempted to restrict public access during the long period of time that the road has been in use by the public. Hilda Peterson, McMillan's predecessor in interest to the land involved, testified she maintained gates to keep cattle in pasture, but freely allowed all public access through the gates. Other landowners whose property is adjacent to the road also testified that they never considered denying public access, although they may have denied access if the public use had been abused. Hilda Peterson also testified that hunters had sought and obtained her permission to travel the road and hunt on her property.

## Issue

Whether the District Court erred in concluding that the Timberline Road is a public road by reason of a prescriptive easement?

The public's acquisition of a prescriptive easement on a private road may be explained as follows:

> That the public may acquire the right by prescription to pass over private land is undisputed and such is the law in Montana. To establish the existence of a public road by prescription it must be shown that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner. . . .
>
> By "continuous and uninterrupted use" is meant that the use was not interrupted by the act of the owner of the land, and that the right was not abandoned by the one claiming it. . . .
>
> This court has said that to establish a prescriptive right it must be shown that the use was adverse and not by permission of the landowner. However, the older a road the more difficult it usually is to produce the proof of actual adverse use because the witnesses are no longer usually available. . . .

3

> The fact that a road has been barred by gates to be
> opened and closed by the parties passing over the
> land has always been considered as strong evidence
> of a mere license to the public to pass over the
> designated way.  [citations omitted]

Kostbade v. Metier (1967), 150 Mont. 139, 142-45, 432 P.2d 382, 384-86.

Use of an alleged easement for the full statutory period, unexplained, creates a presumption of use adverse to the owner which may be overcome by evidence that the use is permissive.  Lunceford v. Trenk (1974), 163 Mont. 504, 518 P.2d 266.  District courts sitting as finders of fact occupy the best position to determine if the use was permissive or adverse.  Lunceford, 518 P.2d at 267.

McMillan contends that the lower court erred by finding use of Timberline Road adverse to prior owners.  He points out that "the general rule is that the use of the road by another will generally be regarded as permissive where such use does not injure or interfere with the owner's use."  White v. Kamps (1946), 119 Mont. 102, 115-16, 171 P.2d 343, 349.  McMillan also contends that the fact that landowners long gated the road, and the fact that he placed a locked gate on the road in 1985, provides sufficient proof to overturn the lower court's finding that public use established the easement.

Referring again to the standard of review applicable here, absent a demonstration by McMillan that the lower court's determinations are "clearly erroneous", we must affirm the lower court.  Rule 52(a), M.R.Civ.P.  The lower court determined that the presence of gates on Timberline Road did not overcome the presumption that the public's use was by claim of right, adverse to McMillan's predecessors in title.  We acknowledge the rule from previous cases that standing alone, evidence of use by the public of a road

4

obstructed by gates is insufficient to establish a prescriptive easement in favor of the public. Descheemaeker v. Anderson (1957), 131 Mont. 322, 326, 310 P.2d 587, 589. But this Court has also held that a gate constructed "not to stop people but cattle, is not enough standing alone to rebut the presumption established by such [over 50 years] long public use." Kostbade, 432 P.2d at 386.

There is substantial evidence here to support a finding that public travelers pursued a definite, fixed course, continuously and uninterruptedly, down the old railroad bed for nearly one hundred years. The evidence of permissive use brought out by McMillan is scant. Previous landowners could only speculate that they may have attempted to bar public access if gates had been left open by travelers on the road. Hilda Peterson offered another solution to the open gate hypothetical question posed by McMillan's counsel:

> Q. Do you think that you -- if a member of the public came in there and left your gate open, did you think that you had the right to go in there and ask him to leave?

> A. I would have-- yes, I think maybe I would have felt that way. I would certainly have felt like asking him to please keep the gate closed.

(Tr. at 52) Hilda Peterson also testified as follows:

> Q. And as far as you are concerned and your dad was concerned, you gave permission to everybody to go up through there?

> A. There was no specific permission given to anybody to go in there. People went in there, that's all.

(Tr. at 52)

5

Prior to 1954, the relevant statutory period for establishing the right at issue here was ten years. Section 9015 R.C.M. (1935). Since 1953, the period has been five years. Section 70-19-401, MCA. The long public use as documented in the record sufficiently supports the District Court's finding that Timberline Road is a public way. McMillan's evidence purporting to demonstrate permissive use does not overcome such public use. We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices