No. 98-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 215

DANIEL McCAULEY, CHERYL McCAULEY, BRUCE

MEADOWS, JUDY MEADOWS, JON NOEL, SHIRLEY

NOEL, VAL HOLMS, MARI HOLMS, PAMELA BARROWS,

JIM GUNDERSON, SANDI BENSON, and DANIEL BENSON,

Plaintiffs, Respondents and Cross-appellants,

v.

THOMPSON-NISTLER, a corporation; JOHN STELTER;

LAURIE STELTER; WILLIAM P. KLEIN; VIRGINIA

BOMPART; BONNIE BOMPART; WILAMAC, INC., a

corporation; LES LOVE; CRISDEAN LOVE; JAMES "BUCK"

MacCLAURIN; LEWIS AND CLARK COUNTY; and

JEFFERSON COUNTY,

Defendants, Appellants and Cross-respondents.

APPEAL FROM: District Court of the First Judicial District, in and for the

County of Lewis and Clark; District Court of the Fifth

Judicial District, in and for the County of Jefferson,

Honorable John Warner, Judge Presiding

COUNSEL OF RECORD:

For Appellants and Cross-respondents:

Patrick E. Melby, Luxan & Murfitt, Helena, Montana; John C. Doubek

and Carl A. Hatch, Small, Hatch, Doubek & Pyfer, Helena, Montana;

Richard J. Llewellyn, Helena, Montana; K. Paul Stahl and Mike

McGrath, Helena, Montana

For Respondents and Cross-Appellants:

Gregory W. Duncan, Harrison, Loendorf & Poston, Helena, Montana

Submitted on Briefs: January 19, 2000

Decided: August 10, 2000

Filed:

_____

Clerk

Honorable John R. Christensen, District Judge, delivered the Opinion of the Court.

¶1 Appellants John Stelter, Laurie Stelter and Lewis and Clark County appeal from the Judgment and Findings Of Fact and Conclusions Of Law of the First Judicial District Court, Lewis and Clark County. Respondents cross-appeal. We affirm in part, modify in part and remand for entry of an amended judgment.

¶2 Appellants and Cross-appellants have raised numerous issues on appeal. We restate the issues as follows:

¶3 1. Did public use for more than five years prior to July 1, 1895, of the Tucker Gulch Road, a branch of the Dry Gulch Road, establish the Tucker Gulch Road as a public

highway pursuant to § 2600, The Codes and Statutes of Montana (1895)?

¶4 2. If the Tucker Gulch Road became a public highway pursuant to § 2600, The Codes and Statutes of Montana (1895), was the road thereafter abandoned by Lewis and Clark County?

¶5 3. Did the District Court err in finding there was not a public prescriptive easement along the relocated "new road" through the property of the Meadowses, Noels and McCauleys and Granite Mountain subdivision?

¶6 4. Did the District Court err when it appeared to limit Appellants' ingress and egress over the McCauley easement, new road and access easements in the Granite Mountain subdivision to normal activities associated with residential living?

¶7 5. Did the District Court err when it granted Klein unrestricted access across Lot 23 and the Dasey Lode (the McCauley easement) and the Granite Mountain subdivision to access the Primrose Lode mining claim?

¶8 6. Were Cross-respondents Loves and Thompson-Nistler prevailing parties in the District Court and thus entitled to recover their costs?

## Identification of Parties

¶9 This case began as an action filed in Jefferson County, Montana, by William P. Klein, Jr. (Klein), owner of the Primrose Lode mining claim located in Jefferson and Lewis and Clark Counties, against Pamela Barrows (Barrows) and Jim Gunderson (Gunderson), owners of Tracts 3, 4 and 5 of the Granite Mountain subdivision. While the Klein case was being litigated in Jefferson County, several persons-Daniel M. McCauley and Cheryl A. McCauley (McCauleys), owners of the Dasey Lode (MS 9074); Bruce Meadows and Judy Meadows (Meadowses), owners of property on Dry Gulch Road; Jon Noel and Shirley Noel (Noels), owners of Government Lot 23; Val Holms and Mari Holms (Holmses), owners of Tract 2, Granite Mountain subdivision; Pamela Barrows; Jim Gunderson; Sandi Benson and Daniel Benson (Bensons), owners of Tract A, Granite Mountain subdivision-initiated a quiet title action against Thompson-Nistler, owner and developer of the Alpine Meadows subdivision; John Stelter and Laurie Stelter (Stelters), owners of a tract in Alpine Meadows subdivision; William P. Klein, Jr.; Virginia Bompart and Bonnie Bompart (Bomparts), owners of real property east of the Granite Mountain subdivision;

Wilamac, Inc. (Wilamac), a corporation, owner of Tract 1, Granite Mountain subdivision; Les Love and Crisdean Love (Loves), owners of tracts in the Alpine Meadows subdivision; James "Buck" MacLaurin, owner of Wilamac, Inc.; and Lewis and Clark and Jefferson Counties. Meadowses own property on Dry Gulch Road, which all parties have agreed is a county road at least to Meadowses' driveway. McCauleys own the Dasey Lode (MS 9074) through which the old road traversed. Noels own Government Lot 23 on which the new road crosses for a short distance and on which the parties have been traveling along the southern boundary (Noel easement) just north of the McCauley easement established by the parties' 1984 agreement. Bensons, Wilamac and Barrows/Gunderson all own tracts in the Granite Mountain subdivision. Klein is the owner of the Primrose Lode patented mining claim lying south of the Granite Mountain subdivision. Bomparts own real property to the east of the Granite Mountain subdivision. Thompson-Nistler, Loves and Stelters own properties to the north of the Granite Mountain subdivision. Their properties were formerly owned by The Diehl Company and are now referred to as the Alpine Meadows subdivision. Attached to this Opinion as an exhibit is Figure 1, which was utilized by the District Court in its decision.

¶10 Margaret P. Langlykke et al. were the previous owners of the Granite Mountain properties later transferred to Granite Mountain, Inc.

## Factual and Procedural Background

¶11 The principal roadway that is subject of this dispute extends Davis Street on the south side of Helena, Montana, where it becomes Dry Gulch Road. The roadway continues along Dry Gulch Road to an intersection where a fork continues eastward up Tucker Gulch and eventually to the Jefferson County line. From the county line, the road continues east and eventually forks again, with one fork extending down Holmes Gulch and the other down Clark's Gulch. The disputed roadway will be referred to as the Tucker Gulch Road which is principally the same road surveyed by the Lewis and Clark County surveyor in 1902. The Tucker Gulch Road will also be referred to as the "old road." The old road traverses MS 9074 (McCauleys' property), Tract A (Bensons' property), Tract 1 (Wilamac's property), Tract 2 (Holmses' property) and Tracts 4 and 5 (Gunderson and Barrows' property).

¶12 In 1984, an Agreement for Change of Easement was executed by the owners of Respondents' properties and the McCauleys. That agreement acknowledged that The Diehl Company, Bomparts and Granite Mountain, Inc., owned an easement by prescription

across the Dasey Lode (MS 9074) and in return for an agreement to abandon the easement by prescription received a 30-foot access road along the northerly 30 feet of the Dasey Lode. Thereafter, the owners of Granite Mountain, Inc. platted a 30-foot access road easement through Granite Mountain, Inc. properties moving the roadway north from the old road. This road is referred to as the "new road." In 1988, Granite Mountain, Inc., filed a Certificate of Survey subdividing its property into seven 20-acre tracts and expanding the roadway to a 60-foot road easement for owners' ingress and egress. The Certificate of Survey provided two northerly 60-foot access easements on its east and west borders extending to the north allowing access to The Diehl Company properties. Both the Agreement for Change of Easement as well as the Certificate of Survey were executed by The Diehl Company.

¶13 At trial Appellants contended the old road is a public and county road established either by operation of law or by petition and thus the Tucker Gulch Road may be used by the public in general without restriction. Appellants contended in the alternative that the public had an easement by prescription crossing Respondents' property or that they had private easements by prescription or grant on roads crossing Respondents' property including both the old road and the new road. After trial, the District Court found that a portion of the disputed road claimed to be a county road situated in Jefferson County was a county road and that determination has not been appealed by either party. The District Court further found the Tucker Gulch Road (old road) had been used to gain access to the mines south of Helena for 30 to 40 years by 1902, beginning in the 1860's, until a petition was filed with the Lewis and Clark County Commissioners to open the road in 1902. The 1902 petition request caused a survey to be completed at the request of the county commissioners, which survey was filed in the county records. The District Court found the original road as surveyed was still visible on the ground at the time of trial, but that the county commissioners had never formally opened the road. Thus the court found it was not a petitioned county road.

¶14 The District Court found there was a prescriptive easement by the public over the old road which had been lost through abandonment and by reverse adverse possession.

¶15 The District Court found the public did not acquire a prescriptive easement across the new road but that the Appellants had a prescriptive easement over a short stretch of the road crossing the property of Meadowses and Noels from the Tucker Gulch Road to the Dasey Lode. The court also found that Appellants had the right to use the McCauley easement and the Granite Mountain subdivision easements for access to their properties

for residential purposes.

¶16 Additionally, the District Court found that the owners of tracts in the Alpine Meadows subdivision (formerly owned by The Diehl Company) had the right to use the McCauley easement (30 feet in width) as well as the remaining 60-foot easements through the Granite Mountain subdivision. The court found that Appellants did not have the right to utilize the Noel easement, and thus they could be denied access by the Noels. The court did not find that either party prevailed and thus denied costs and refused to grant injunctive relief.

¶17 From the District Court's Findings Of Fact, Conclusions Of Law and Judgment, appeals and cross-appeals have been filed.

## Standard of Review

¶18 We review a district court's findings of fact to determine whether they are clearly erroneous. Rule 52(a), M.R.Civ.P. In *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 820 P.2d 1285, we adopted the following three-part inquiry:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed."

*Interstate Production Credit, 250 Mont. at 323, 820 P.2d at 1287 (citations omitted). We review a district court's conclusions of law de novo to determine whether they are correct. See Steer, Inc. v. Dept. Of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. This Court is not bound by the trial court's conclusions and remains free to reach its own based on the record before it. Baertsch v. County of Lewis and Clark (1992), 256 Mont. 114, 119, 845 P.2d 106, 109.*

## Issues

¶19 1. Did public use for more than five years prior to July 1, 1895, of the Tucker Gulch Road, a branch of the Dry Gulch Road, establish the Tucker Gulch Road as a public

highway pursuant to § 2600, The Codes and Statutes of Montana (1895)?

¶20 After hearing extensive testimony, the District Court found the Tucker Gulch Road had probably been used to gain access to mines south of Helena for 30 to 40 years by 1902. The court further found it was roughly in the same location and utilized by miners and merchants and probably some members of the traveling public. The District Court found the use started in the 1860's and continued thereafter until at least 1902.

¶21 In *Richter v. Rose*, 1998 MT 165, 289 Mont. 379, 962 P.2d 583, this Court, citing *State v. Nolan* (1920), 58 Mont. 167, 173, 191 P. 150, 152, discussed how a public highway could be established prior to 1895:

> Prior to 1895, a public highway could be established in Montana in four different ways: 1) by action of the proper authorities in accordance with statutory provisions; 2) by prescriptive use for the period of time required by statute; 3) by opening and dedication by the private owner; and 4) on partition of real property.

*Richter, ¶ 28.*

¶22 In 1895, the Legislature passed § 2600, The Codes and Statutes of Montana (1895), which provided:

> **All highways, roads**, streets, alleys, courts, places, and bridges, laid out or erected by the public, or **now traveled or used by the public**, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, **are public highways**. [Emphasis supplied.]

¶23 This Court has held:

> These provisions were first enacted as sections 2600 and 2603 of the Political Code of 1895. Whatever may have been the rule touching the establishment of public highways by prescription prior to the date of their adoption, they declared what should be considered highways at the time of their enactment and how a highway might thereafter be established. By the first section all highways, roads, streets, alleys, etc., were declared public highways (1) which had been laid out or erected by the public (that is, by the public authorities and at public expense); (2) which were then traveled or used by the public; or (3) which had been laid out or erected by

others (by private persons) and dedicated or abandoned to the public. We are not now concerned with the question whether it was the intention of the legislature to declare all roads then in use to be public highways, without reference to how long the use had continued or what the character of use had been. We think, however, as we said in *State v. Auchard,* 22 Mont. 14, 55 Pac. 361, that the intention was to declare those only to be public highways which had been established by the public authorities, or were recognized by them and used generally by the public, or which had become such by prescription or adverse use at the time the provision was enacted. Any other view would, in our opinion, render the legislation open to serious constitutional objection (Const., sec. 14, Art. III).

*Barnard Realty Co. v. City of Butte (1913), 48 Mont. 102, 109-110, 136 P. 1064, 1067; accord Peasley v. Trosper (1936), 103 Mont. 401, 405, 64 P.2d 109, 110.*

¶24 This Court has carefully reviewed the trial transcript as well as numerous exhibits admitted into evidence. The District Court's finding that the Tucker Gulch Road had been used by miners, merchants and members of the traveling public beginning as early as 1860 is supported by substantial evidence. In 1892, a group of miners requested the county commissioners to repair a wash out at the east (Tucker Gulch Road) and west forks of the Dry Gulch Road. The road was mentioned in several mineral surveys performed in the area in the late 1880's. The road has remained in the same location since the 1868 Geological Survey field notes were made while surveying the subdivision lines of Township 9 North, Range 3 West, M.P.M. The road has consistently appeared in the same location on United States Geological Surveys taken as early as 1899. Though the road has not been used for many years as the parties now utilize the "new road," the District Court found the road is still clearly visible and could be made passable with some work.

¶25 The District Court, after finding the road was clearly defined and in use by the public for at least 27 years prior to the enactment of § 2600, The Codes and Statutes of Montana (1895), failed to enter a conclusion of law consistent with that finding. As the District Court's finding is supported by substantial evidence, this Court concludes the Tucker Gulch Road (old road) was established as a public highway (now county road) pursuant to § 2600, The Codes and Statutes of Montana (1895).

¶26 This Court, having entered its conclusion, will not address the issues relating to the District Court's conclusion that the Tucker Gulch Road was not properly petitioned in 1902 pursuant to the requirements of § 2603, The Codes and Statutes of Montana (1895).

¶27 2. If the Tucker Gulch Road became a public highway pursuant to § 2600, The Codes and Statutes of Montana (1895), was the road thereafter abandoned by Lewis and Clark County?

¶28 Cross-appellants argue that, even if the Tucker Gulch Road became a public highway in 1895, 1902 or 1913, it has been abandoned through nonuse, no maintenance and by reverse adverse possession. Section 2601, The Codes and Statutes of Montana (1895), required:

> All public highways, once established, must continue to be public highways until abandoned by order of the board of commissioners of the county in which they are situated, or by operation of law, or judgment of a court of competent jurisdiction.

¶29 Section 2601 is nearly identical to § 7-14-2615, MCA, the present abandonment statute. In construing § 2601, this Court stated:

> Be this as it may, the second section clearly evinces the intention that no highway falling within the enumeration contained in the former section should be vacated except by the public authorities[.]

*Barnard, 48 Mont. at 110, 136 P. at 1067.*

¶30 As to public highways declared as such, the intent to abandon required by § 2601 is the same today.

> One of the elements necessary to prove abandonment of public property by governmental entities is a showing of a clear intent to abandon. The conduct claimed to demonstrate this intent must be of character so decisive and conclusive as to indicate a clear intent to abandon. *Rumph v. Dale Edwards, Inc.* (1979), 183 Mont. 359, 600 P.2d 163. The conduct must be some affirmative official act, and not mere implication. Mere nonuse, even for extended periods of time, is generally insufficient, by itself, to indicate an intent to abandon. *City of Billings v. O.E. Lee Co.* (1975), 168 Mont. 264, 542 P.2d 97.

*Baertsch, 256 Mont. at 122, 845 P.2d at 111.*

¶31 Mere nonuse or lack of maintenance by the county is not sufficient to indicate a clear intent to abandon a county road without preceding such by notice and a public hearing.

¶32 Cross-appellants urge this Court to expand its holding in *Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Foundation, Inc.* (1993), 259 Mont. 279, 856 P.2d 525, wherein we held that if a public prescriptive easement was found, it could be extinguished by the conduct of the owners through adverse possession. Relying on § 70-17-111(3), MCA, we held that if a prescriptive easement existed, subsequent acts inconsistent with a claim of prescription supported the conclusion that the prescriptive easement had been extinguished. *Public Lands Access*, 259 Mont. at 292, 856 P.2d at 532, citing *Morrison v. Higbee* (1983), 204 Mont. 515, 668 P.2d 1025, and *Downing v. Grover* (1989), 237 Mont. 172, 772 P.2d 850.

¶33 *Public Lands Access* is clearly distinguishable from the facts of this case. The easement dispute in that case involved a public prescriptive easement which the Court held was clearly extinguished by reverse adverse possession and by the inconsistent acts of the road users in acquiescing to a walk-in program for more than the full statutory period. Here, Tucker Gulch Road (old road) is, based upon the District Court's findings and this Court's conclusion, a public highway (county road). Montana has followed the general rule that title to public roads may not be obtained by adverse possession. *City of Billings v. Pierce Packing Co.* (1945), 117 Mont. 255, 263, 161 P.2d 636, 639. Recently, in *Baertsch*, this Court was requested to adopt the landowner's suggestion that Montana join the minority of jurisdictions which allow title to public roads to be obtained by adverse possession. We declined to do so in *Baertsch,* and we decline to do so now. We conclude that, as required by statute, there must be a showing of clear intent to abandon a county road.

¶34 Cross-appellants argue Lewis and Clark County's failure to respond to several quiet title actions, though not served with process in those actions, and Lewis and Clark County's adoption of a resolution naming the road are sufficient acts to indicate a clear intent to abandon the road as a county road. We disagree. Abandonment cannot be established by mere implication. *Devoe v. State* (1997), 281 Mont. 356, 368, 935 P.2d 256, 263, *citing with approval Baertsch*, 256 Mont. at 122, 845 P.2d at 111. There is no evidence in the instant case of any affirmative official act of the Board of County Commissioners of Lewis and Clark County indicating an intent to abandon the road. We conclude Tucker Gulch Road (old road) has not been abandoned.

¶35 3. Did the District Court err in finding there was not a public prescriptive easement along the relocated "new road" through the property of the Meadowses, Noels and McCauleys and Granite Mountain subdivision?

¶36 The District Court concluded that a public prescriptive easement had been established across the old road but the public's prescriptive easement had been clearly abandoned and lost by reverse adverse possession. The District Court further concluded that no public prescriptive easement had been established on the new road. Appellants argue the evidence showed substantial use of the road by the public for recreational, law enforcement, agricultural, forestry, mining and other commercial purposes. Appellants also argue that a public prescriptive easement having been established across the old road, the easement had been relocated to the new road as it was done prior to this Court's holding in *Glenn v. Grosfield* (1995), 274 Mont. 192, 906 P.2d 201.

¶37 A public prescriptive easement is established in the same manner as a private prescriptive easement except the users of the road are members of the general public rather than an individual who uses the easement for access to his property.

> Prescriptive easements may be proved by public or private use, but in either case, the party claiming the right must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the full statutory period. *Graham v. Mack* (1984), 216 Mont. 165, 172-173, 699 P.2d 590, 595. Recently, in *Johnson v. McMillan* (1989), 238 Mont. 393, 778 P.2d 395, we discussed public acquisition of a prescriptive easement on a private road:
>
> "That the public may acquire the right by prescription to pass over private land is undisputed and such is the law in Montana. To establish the existence of a public road by prescription it must be shown that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner. . . ."

*Granite County v. Komberec (1990), 245 Mont. 252, 257, 800 P.2d 166, 169, overruled on other grounds Warnack v. Coneen Family Trust (1994), 266 Mont. 203, 879 P.2d 715.*

¶38 This Court, in concluding that a public prescriptive easement had been established in *Granite County,* held:

Generally, seasonal use by hunters, fishermen, hikers, campers, use by neighbors visiting neighbors, and persons cutting Christmas trees and gathering firewood are not sufficient to establish such a use. See *Medhus v. Dutter* (1979), 184 Mont. 437, 443, 603 P.2d 669, 672; *Oates v. Knutson* (1979), 182 Mont. 195, 200, 595 P.2d 1181, 1184; *Taylor v. Petranek* (1975), 173 Mont. 433, 439, 568 P.2d 120, 123; *Ewan v. Stenberg* (1975), 168 Mont. 63, 68, 541 P.2d 60, 63. However, in this case there was evidence of uses other than recreational such as mining, logging, timber management, and fire protection.

*Granite County, 245 Mont. at 258, 800 P.2d at 170.*

¶39 The District Court concluded, based upon the evidence before it, that the public did acquire a prescriptive right to use the old road in the 19th century. However, after the mines closed and into the 1930's, the miners, their families and merchants stopped using the road. Thereafter in 1984, the owners of property in the area began utilizing the new road. Though there is some evidence members of the general public on occasion would traverse the old road, surrounding landowners placed gates, signs and eventually changed its route to serve their purposes. Thus, the District Court found that if a prescriptive easement across the old road had existed, it was lost by reverse adverse possession relying on our holding in *Public Lands Access*.

¶40 As to the new road, most of the nonpermissive use of the road was by occasional recreationalists such as hunters, firewood gatherers, motorcyclists and other recreational activity. The District Court found use of the new road by businessmen was infrequent and for too short a period of time to establish a public easement by prescription across the new road. Substantial evidence supports the District Court's findings, and we will affirm the District Court's conclusion that a public prescriptive easement does not exist across the new road.

¶41 4. Did the District Court err when it appeared to limit Appellants' ingress and egress over the McCauley easement, new road and access easements in the Granite Mountain subdivision to normal activities associated with residential living?

¶42 The District Court found the McCauley easement, the new road and the access easements in the Granite Mountain subdivision were private roads. The court further concluded the creation of those roads were not specific so that their use was for ingress and egress of the owners including the owners in the Alpine Meadows subdivision.

Thereafter, the District Court appeared to limit their rights of ingress and egress to those "normal activities conducted with residential living." Appellants argue there should be no restrictions in that the Appellants have easements by prescription and grant access across the property of Respondents. Respondents argue the easements by prescription or grant should be limited to historical use of the roads by The Diehl Company, Langlykkes and Bomparts.

¶43 The District Court found easements by prescription and grant based on several documents executed by the parties in the 1980's. On May 15, 1984, Langlykkes and McCauleys executed an agreement with The Diehl Company, Bomparts and Granite Mountain, Inc., successor-in-interest to the Langlykkes, for change of easement. The agreement acknowledged that The Diehl Company, Bomparts and Granite Mountain, Inc., had a prescriptive easement across the Dasey Lode (McCauleys' property) for access to property which The Diehl Company, Langlykkes and Bomparts owned to the east of the Dasey Lode. The original prescriptive easement (following the old road) clearly bisected the Dasey Lode at an angle from corner to corner. Diehl, Langlykke and Granite Mountain, Inc., agreed to abandon that easement and in return received a 30-foot grant easement along the northern borderline of the Dasey Lode. Langlykke and McCauley created a 30-foot easement for those affected to access their properties to the east of the Dasey Lode with no restrictions.

¶44 On August 27, 1984, Langlykkes executed a 30 Feet Access Road Easement surveying a 30-foot easement through the Granite Mountain properties.

¶45 Approximately four years later, Granite Mountain, Inc., filed its Certificate of Survey subdividing the Granite Mountain property into seven 20-acre tracts. The Certificate of Survey increased the width of the easement roads to 60 feet and specifically included two additional 60-foot easements on the east and west edges of the subdivision providing access to The Diehl Company property to the north. The Diehl Company executed the Certificate of Survey as an owner though it did not specifically own property within the subdivision. In neither document executed by The Diehl Company or other parties were the access easements restricted.

¶46 The District Court found Appellants were successors-in-interest to The Diehl Company as owners in the Alpine Meadows subdivision. The court further found the developers of the Alpine Meadows subdivision intended them to acquire the right to use the designated right-of-ways on the plat of the Granite Mountain subdivision for access to

their properties. Further, the right-of-way access easements through the McCauley property were as designated on the 1984 agreement which the court found clearly was executed to benefit the Bomparts, The Diehl Company, the Granite Mountain owners as well as their successors-in-interest.

¶47 The District Court also found that Diehl, Bomparts and Langlykkes had a prescriptive easement to use a short stretch of road running across the property of Meadowses and Noels (Government Lot 23) from the Tucker Gulch Road to the Dasey Lode. Such a prescriptive easement was then included in the McCauley easement and passed along with the other access rights. The District Court's finding is supported by substantial evidence of adverse and continuous use by all parties of the property of Meadowses and Noels from the Tucker Gulch Road to the Dasey Lode (McCauley easement).

¶48 The District Court concluded that by virtue of the 1984 agreement, Bomparts and The Diehl Company received an access easement by grant across the Dasey Lode and Langlykkes received an easement by reservation. Thus the Appellants and individual Defendants are all owners of an easement across the Meadowses and Noels lands and the northern border of the Dasey Lode-Bomparts as actual parties to the agreement, Klein as a successor to the Langlykkes and The Diehl Company and the remaining Appellants as successors of The Diehl Company. The court found The Diehl Company, as a signator of the Granite Mountain Certificate of Survey, received a specific grant of an easement for ingress and egress across all road easements depicted on the Certificate of Survey. The court's findings and conclusions in this regard are supported by substantial credible evidence.

¶49 The court then concluded the creation of the easements was not specific and that the easements were designed for the access of the owners. It then appeared to limit the easements to "normal activities conducted with residential living." Such a restriction does not exist in either the 1984 agreement or Certificate of Survey executed by The Diehl Company. The Diehl Company received a 30-foot easement from McCauleys across the northern border of the Dasey Lode to access its property to the east. Thereafter, The Diehl Company executed the Granite Mountain Certificate of Survey which provided 60-foot easements for the owners' ingress and egress. The Diehl Company signed as an owner on the Certificate of Survey. Section 70-20-308, MCA, provides that a "transfer of real property passes all easements attached thereto[.]" Additionally, § 70-1-520, MCA, provides that the "transfer of a thing also transfers all its incidents unless expressly excepted[.]" Neither the 1984 agreement nor the Certificate of Survey limited access over

the several easements. The breadth and scope of an easement are determined upon the actual terms of the grant. *See* § 70-17-106, MCA; *Van Hook v. Jennings*, 1998 MT 198, ¶ 12, 295 Mt. 409, ¶ 12, 983 P.2d 995, ¶ 12.

¶50 Appellants' request that "and the conduct of normal activities conducted with residential living" be stricken from the court's Conclusion XII will be granted. Appellants' right of ingress and egress over the property of Meadowses and Noels (Government Lot 23), the McCauley easement, the new road and the access easements appearing on the Granite Mountain Certificate of Survey, though private, are unrestricted as to Appellants' use.

¶51 5. Did the District Court err when it granted Klein unrestricted access across Lot 23 and the Dasey Lode (the McCauley easement) and the Granite Mountain subdivision to access the Primrose Lode mining claim?

¶52 Klein's access easements are based on his purchase of the Primrose Lode mining claim. Klein purchased part of the Primrose from Langlykkes and the balance from The Diehl Company. In doing so, Langlykkes' warranty deed conveyed to Klein all "Right-of-Way Easements for ingress and egress . . . over, across and under, all access roads . . . as shown on Certificate of Survey filed under document no. 436157/E" (Granite Mountain subdivision survey) as well as Langlykkes' rights in the recorded Grant Of Easement and the 1984 agreement. Klein also executed an Easement Agreement with The Diehl Company granting him the same access rights owned by The Diehl Company. The District Court concluded that when Klein purchased the Primrose Lode mining claim, he received the same rights to use all access roads on the Granite Mountain as those rights owned by Langlykkes and The Diehl Company. The court specifically noted that Diehl, by executing the Granite Mountain Certificate of Survey, received a specific grant of an easement for ingress and egress over and across all road easements depicted on the Certificate of Survey. Thus, the court concluded Klein had an easement and right-of-way over the McCauley easement, access easements and the new road within the Granite Mountain subdivision to the point where it joins the county road at the Jefferson County line.

¶53 Respondents' principal argument is that the 1984 agreement only moved a prescriptive easement and that prescriptive easement was limited to its historical use which was agricultural in nature with some mining. Respondents further argue The Diehl Company was not an owner within the Granite Mountain subdivision and thus its signing of the subdivision survey did not grant it any rights. Respondents' arguments are without merit.

The District Court correctly found that The Diehl Company was studying potential land development to the north of the Granite Mountain property then owned by Langlykke and, upon agreeing to McCauley's requested change of the easement on the Dasey Lode, received an unrestricted easement to Diehl properties located to the north and east. The Granite Mountain Certificate of Survey clearly benefits The Diehl Company in providing 60-foot easements directly to Diehl property (now the Alpine Meadows subdivision) located north of the Granite Mountain subdivision.

¶54 At the time the 1984 agreement was executed, it is clear all parties were contemplating further development of their respective properties and that agriculture or mining were no longer the principal uses of the properties. As noted above, § 70-20-308, MCA, provides that a "transfer of real property passes all easements attached thereto[.]" It was clear to the District Court that the Langlykkes family, in negotiating the 1984 agreement as well as executing the required warranty deed, understood the easement rights which they continued to hold as owners of the Primrose Lode mining claim. Those rights included the right to use all access roads through the Granite Mountain subdivision as depicted on the Certificate of Survey. Likewise, the District Court found The Diehl Company, which still owned part of the Primrose Lode mining claim lying in Jefferson County, understood its easement rights for ingress and egress for the benefit of the Primrose. The Diehl Company transferred those rights to Klein. The District Court did not err in finding Klein had an easement by prescription and by grant across the property of Meadowses and Noels (Government Lot 23), the McCauley easement, the access easements (Granite Mountain subdivision), and the new road to the point where it joins the county road at the Jefferson County line.

¶55 6. Were Cross-respondents Loves and Thompson-Nistler prevailing parties in the District Court and thus entitled to recover their costs?

¶56 The District Court concluded that all parties received some of their requested relief but no party received all they prayed for. Thus, the court concluded that each party should bear its own costs and attorney fees. Loves and Thompson-Nistler in their appellate brief argue they prevailed in the District Court and therefore are entitled to their costs. Though such an argument was made in their appellate briefs, it does not appear Loves and Thompson-Nistler specifically appealed from the District Court's Judgment. However, this Court has carefully reviewed their answer filed in the District Court, as well as the final pre-trial order, and notes their requested relief was much broader than what the District Court eventually held. Though it is true they successfully resisted the efforts of

Respondents to quiet title to their properties and to extinguish their rights to use the roads across Respondents' properties, the District Court did not find the old road to be a county road nor did the District Court find the public had a prescriptive easement across the new road. Though this Court recognizes these Cross-respondents were principally interested in their right to privately access their properties in Alpine Meadows across Respondents' properties, they also fully supported the efforts of other parties to have both the old road and new road declared public roads. As the District Court concluded, each of the parties received some of the relief prayed for. Our review of the record does not lead us to believe the District Court's Conclusion of Law is incorrect.

¶57 The District Court's Findings Of Fact, Conclusions Of Law and Judgment are affirmed in part, modified in part and remanded for entry of an amended judgment consistent with this Opinion.

/S/ JOHN R. CHRISTENSEN

District Judge

We concur:

/S/ MIKE SALVAGNI

District Judge

/S/ MARC G. BUYSKE

District Judge

/S/ RICHARD A. PHILLIPS

District Judge

/S/ WM. NELS SWANDAL

District Judge

/S/ TED L. MIZNER

District Judge

/S/ ED McLEAN

District Judge


\* \* \* \* SEE HARD COPY FOR MAP ATTACHED TO OPINION \* \* \* \*