No. 00-815

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 119N

SHERMAN P. HAWKINS,

      Plaintiff and Appellant,

    v.

CECIL HAWKINS,

      Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and for the County of Yellowstone,
                  The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Sherman P. Hawkins, *Pro Se*, Deer Lodge, Montana

      For Respondent:

          Bruce F. Fain; Murphy, Kirkpatrick & Fain, Billings, Montana

Submitted on Briefs:  April 4, 2002

Decided:  June 6, 2002

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     Sherman P. Hawkins (Sherman) seeks to recover from his brother, Cecil Hawkins (Cecil), damages for conversion and fraud relating to real and personal property in which they and their two sisters hold a joint tenancy. Following a bench trial, the Thirteenth Judicial District Court, Yellowstone County, ruled that Sherman had not sustained his burden of proof and entered judgment that Sherman take nothing for his claims and that Cecil is entitled to his reasonable costs in defending this action. Sherman appeals. We affirm.

¶3     Sherman lists six issues on appeal. Cecil, however, argues that because the notice of appeal identified only the "decision of the district court dated November 14 [sic], 2000" as the judgment or order from which appeal is taken, the issues should be limited to those issues arising out of the District Court's November 15, 2000, Findings of Fact, Conclusions of Law and Judgment. We agree. See *Lewis v. Puget Sound Power & Light Co.*, 2001 MT 145, ¶ 27, 306 Mont. 37, ¶ 27, 29 P.3d 1028, ¶ 27. We will not consider the

2

issues Sherman attempts to raise relating to matters outside the findings, conclusions, and judgment from which appeal has been taken. We consider only whether the District Court's findings of fact are clearly erroneous and whether its conclusions of law are correct.

¶4 Our "clearly erroneous" standard of review of a trial court's findings of fact requires consideration of whether the findings are supported by substantial evidence; whether the district court misapprehended the effect of the evidence; and whether our review of the record leaves us with a definite and firm conviction that a mistake has been made. *See McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 18, 301 Mont. 81, ¶ 18, 10 P.3d 794, ¶ 18. We review conclusions of law to determine whether they are correct. *McCauley*, ¶ 18.

¶5 Sherman challenges eight of the District Court's findings. He first objects to the statement in Finding No. 3 that the parties' stepfather sold his life estate in the property to Cecil. Sherman contends there was no sale because the deed was unrecorded.

¶6 An unrecorded deed is valid as between the parties and as to those who have notice of it. Section 70-21-102, MCA. Sherman testified at trial that he had no notice of the sale of the life estate. Thus, his testimony would support a finding that the sale was invalid as to him. The District Court's finding, however, does not state that the sale was valid as to Sherman, but only that "[b]efore his death in 1989, [the stepfather] sold his life estate

3

to Cecil Hawkins for one dollar so Cecil could try to save the ranch." To that extent, the finding is supported by substantial credible evidence and is not otherwise clearly erroneous.

¶7 Sherman next objects to the statements in Finding Nos. 4, 5, and 7 that Cecil was "sav[ing] the ranch" and "operat[ing] the property" because, according to Sherman, the property was not operated by its joint tenants as a working ranch but instead was leased out, requiring only that the joint tenants administer the lease. Cecil presented substantial evidence at trial concerning the work he did to maintain the ranch property, including fixing up--and later selling--the house on the ranch and repairing fencing and wells. He also presented the testimony of an employee of a property management company who estimated that his company would charge $6,000 per year to manage the ranch. We conclude the references to Cecil "sav[ing] the ranch" and "operat[ing] the property" in Finding Nos. 4, 5, and 7 are not clearly erroneous.

¶8 In objecting to the first sentence of the District Court's Finding No. 8, stating he alleged Cecil converted ranch property, Sherman says he claimed conversion of money. On this point, the record wholly supports Sherman's claim and, consequently, that part of Finding No. 8 is clearly erroneous. The second sentence of Finding No. 8 states that Sherman alleges Cecil took "Hawkins property proceeds that belong to Sherman." Sherman does not challenge that portion of the finding, which is supported in the record.

4

¶9    Sherman also objects to the District Court's reliance in Finding Nos. 9, 10, and 11 on Cecil's "Transaction Report" instead of other documents Sherman claims to have offered as evidence. In the "Transaction Report," Cecil itemized the income and expenses of the property for each year from 1989 through 2000. Our review of the record confirms that, although Sherman asked various witnesses to refer to various other documents during their testimony, those documents were not introduced into evidence. The "Transaction Report" was the only document offered or admitted into evidence. We hold that the District Court did not err in relying upon the "Transaction Report."

¶10   In order to be successful on either of his claims, Sherman must prove that he suffered damages. *See Lane v. Dunkle* (1988), 231 Mont. 365, 368, 753 P.2d 321, 323 (elements of conversion); *Bartlett v. Allstate Ins. Co.* (1996), 280 Mont. 63, 71, 929 P.2d 227, 231-32 (elements of fraud). He failed to do so. Only Sherman testified that Cecil unlawfully took control of any proceeds belonging to him. All of the other evidence showed that Cecil used all income from the property to pay expenses relating to the property. Further, the testimony of the credit officer for Farm Credit Services made it clear that the joint tenants would have lost the property without Cecil's intervention. Credibility of witnesses and the weight to be afforded their testimony are matters to be determined by the trial court. *Matter of J.M.W.E.H.,* 1998 MT 18, ¶ 34, 287 Mont. 239, ¶ 34, 954 P.2d 26, ¶ 34 (citations omitted).

¶11 We conclude the error in the District Court's Finding No. 8 is harmless because of Sherman's failure to establish any damages. We further hold that the District Court was correct in concluding that Sherman is entitled to take nothing from his claims.

¶12 In his reply brief, Sherman raises a new issue regarding Cecil's alleged failure to deliver a transcript. That argument is unpersuasive because, under Rule 9(b), M.R.App.P., it is the duty of the appellant, not the respondent, to order and pay for transcripts. In addition, we do not consider issues raised for the first time in a reply brief. *See* Rule 23(c), M.R.App.P.; *Loney v. Milodragovich, Dale & Dye, P.C.* (1995), 273 Mont. 506, 512, 905 P.2d 158, 162.

¶13 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM RICE

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter dissents.

¶14     I dissent.  Although I agree that Sherman failed to present evidence to substantiate his claims against Cecil, I would conclude that such failure was due in significant part to Cecil's refusal to answer Sherman's discovery requests, and the District Court's *de facto* endorsement of that refusal.   Sherman quite reasonably requested the production of bank statements to verify the income and expenses of the ranch property.  Cecil refused to provide the statements, and produced instead a compilation of expenses that he had prepared, the accuracy of which Sherman could not possibly verify without having access to the underlying bank statements.

¶15     The fact that Sherman is in prison made it virtually impossible for him to obtain such statements in any other way, and he therefore had to rely on the discovery process and the Court's enforcement of the rules of discovery to get this information.  Cecil refused to comply with the Rules, and the Court let him get away with it.

¶16     I would reverse and remand, and compel Cecil to produce the bank statements Sherman requested.  I dissent from our refusal to do so.


                                                          /S/ PATRICIA COTTER


7