Justice Ingrid Gustafson delivered the Opinion of the Court.
***107 ¶1 Defendants Patricia Gibson, Richie Gibson, and Don Gibson (Gibsons) appeal from the Findings of Fact, Conclusions of Law and Order dated March 15, 2018, in the First Judicial District Court, Lewis and Clark County, which concluded Soup Creek Road was an extinguished prescriptive easement across the parcel of land owned by Plaintiffs Soup Creek, LLC, Dewey Skelton, and Rosana Skelton (Skeltons). We reverse and remand for entry of judgment consistent with this Opinion.
¶2 The issue on appeal is:
***108 Whether the District Court erred in concluding Soup Creek Road is not a public highway.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Soup Creek Road begins at Nelson Road, a county road in Lewis and Clark County, and traverses approximately three miles across Bureau of Land Management (BLM) property administered by the U.S. Forest Service and other private lands before crossing into and through Skeltons' Lot 7 to the Gibson parcel. Soup Creek Road ends at the Gibson parcel, and is the only road access to it.[1] The Skelton and Gibson parcels have not been owned in common since patent from the United States.
¶4 Soup Creek Road has been used as a public travel way for more than 150 years. The earliest record of Soup Creek Road is a U.S. Township Survey from 1868 depicting the road in approximately the same location as the road is situated today. By 1869 the road was used for accessing ferries that carried members of the public across the Missouri River, for mining sapphires and gold, and for accessing homestead and landowner property. Since then, Soup Creek Road has continued to be depicted and referenced in various surveys and public records and to be used by the public and others-in recent decades, primarily by persons accessing the Gibson parcel.
¶5 There was evidence and documentation from the 1880s of a reservoir and ditch over Soup Creek going to the Eldorado Bar. In 1891, an article was published about sapphire hunting outside of Helena, in which a wagon drawn by two "sleepy-looking broncos" took the author via Soup Creek Road out to Eldorado Bar, "one of the most famous bars in Montana," describing the trip as follows:
*372 The down grade was through Soup Creek Canyon, with its succession of magnificent views of wooded cliffs and denuded strata that tell, in fantastic undulations, the story of earth's changes. Sections of the ill-fated flume still cling to the precipitous sides, and far down the canyon timbers belonging to the shattered trestle and which are rotting gradually away are passed. The canyon opens on the Missouri River as clear and as blue as the sky itself. The road turns to the right, and great rows of wild-rose ***109 bushes stand like guards along its sides. In June the pedestrian must walk through a veritable arbor of pink and perfume, for the lofty tops brush the wagon seats as it passes.... A ride of a few more miles has its ending at the Eldorado Bar, where a hut or two tell of their occupants in the sixties.... It would evidently not be an enormous task to reconstruct the flume of the sixties and work out this great bar of 1,600 acres with its rich deposits of gold and gems.
Conde Hamlin, Sapphire Hunting in Montana , Current Literature, A Magazine of Record and Review, May-Aug. 1891, at 120, 123-24.
¶6 In 1894 the Meagher County Commissioners were petitioned to make Soup Creek Road a county road. The petition was rejected in 1895 when the commissioners adopted a different route. Shortly thereafter, the portion of Meagher County that had included Soup Creek Canyon became part of Lewis and Clark County; the entirety of Soup Creek Road is now situated in Lewis and Clark County.
¶7 Soup Creek Road is continually referenced in Lewis and Clark County records but is not included as a county road on its index of county roads. Soup Creek Road is mentioned in a 1907 petition to the Lewis and Clark County Commission which sought approval to extend the then-existing road around Soup Creek Bay to the Trout Creek bridge. The Commission declined to approve the proposed extension.
¶8 In June 1910, M.S. Gunn, Gibsons' predecessor-in-interest, petitioned the Lewis and Clark County Commissioners to abandon only that portion of Soup Creek Road that crosses over what is now the Gibson parcel. The petition was granted.
¶9 The 1913 BLM survey includes Soup Creek Road. Another survey, accepted by the Surveyor General in 1914, which had been conducted in 1906 for the Government Land Office (GLO) (now the Department of Interior which includes the BLM) shows Soup Creek Road running from York Road to the Missouri River over what is now Skeltons' Lot 7 and the Gibson parcel. In Homestead Entry Surveys 177 and 489, completed in 1914 and 1915 respectively, the U.S. Forest Service platted Soup Creek Road, calling it a "road right of way" and a "right of way."
¶10 In 1917, Mayo, a predecessor-in-interest to Skeltons, was issued a government patent for Lot 7, now owned by Skeltons. The patent was issued with reference to GLO Survey No. 489. Survey 489 depicts Tracts A and B with a remainder strip running down the middle between these two tracts to Lot 7. In 1918, Worley, also a predecessor-in-interest to Skeltons, was granted a patent for Tracts A and B, which are also now owned by Skeltons. The patent for Tracts A ***110 and B refers to Homestead Entry Survey 177, which platted Soup Creek Road as a "right of way."
¶11 Soup Creek Road continued to be used through the 1920s, serving adjacent landowners, including homesteads on Lot 7. In 1931, the GLO revised survey depicts the road extending through Lot 7. In 1933, Skeltons' predecessor-in-interest received title to Lot 7 depicting Soup Creek Road in the deed. Landowners continued to use Soup Creek Road in the 1940s, '50s, and '60s when Skeltons purchased Lot 7.
¶12 Rosana Skelton testified she moved onto the property in 1964, soon after a flood washed out Soup Creek Road, after which she continued to use the road to help her move cattle on the property.
¶13 Richie Gibson, and Gibsons' friends and relatives, also testified that although the road was rough and crossing the creek was difficult in places, Soup Creek Road was passable to the Gibson property throughout the 1970s and 1980s. Witnesses testified to using the road during that time to pursue *373 recreational activities such as swimming, hunting, fishing, and camping. Witnesses also testified they traveled the road to Gibsons' parcel to bring in equipment to spray weeds, to clear and burn debris, to haul supplies to fix the dock, and to haul a camper to the property.
¶14 In 1993, Dewey Skelton made improvements to Soup Creek Road, putting in two culverts at the creek crossings and shale at other crossings. Dewey testified work was mostly done on the creek crossings but some repair was also undertaken on other parts of the road. Near the time Dewey repaired the road, Skeltons built a cabin on Lot 7. Following completion of the cabin, they installed gates and took other measures to try to preclude public use of Soup Creek Road. These actions strained relationships between Skeltons and Gibsons. In 1996, Gibsons had an incident with Rosana Skelton when they inadvertently placed some debris on the edge of Lot 7. This resulted in a complete deterioration of their already-strained relationship. Thereafter, Gibsons and their invitees took whatever action was necessary-including cutting locks, disabling gates, and removing obstructions placed by Skeltons-to access their parcel via Soup Creek Road.
¶15 In 2009 Skeltons asked the District Court to declare the portion of Soup Creek Road which traverses their land to be a private road over which Gibsons have no easement, prescriptive or otherwise, to reach their parcel. Gibsons counterclaimed, among other things, that the road is a public highway established prior to 1895 through prescriptive use.
¶16 In September 2017, after a bench trial, the District Court found ***111 Soup Creek Road had been used as described above, but the court found no right-of-way or easement across Lot 7. The court further concluded, "Any public prescriptive easement on Soup Creek Road was extinguished by reverse adverse possession by Rosana Skelton and the acts of road users inconsistent with a claim of prescriptive right by their acquiescing to only permissive use for more than the full statutory period." Gibsons appeal.
STANDARD OF REVIEW
¶17 We review a district court's findings of fact to determine whether they are clearly erroneous. M. R. Civ. P. 52(a). We adopted the following three-part inquiry: First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the trial court misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still determine a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. McCauley v. Thompson-Nistler , 2000 MT 215, ¶ 18, 301 Mont. 81, 10 P.3d 794 (citation omitted).
¶18 We review a district court's conclusions of law de novo to determine whether they are correct. This Court is not bound by the trial court's conclusions and remains free to reach its own based on the record before it. McCauley , ¶ 18 (citations omitted).
DISCUSSION
¶19 Whether the District Court erred in concluding Soup Creek Road is not a public highway.
¶20 Gibsons argue Soup Creek Road is a public highway that has never been abandoned, and alternately, if it is not a public highway, Gibsons have a prescriptive easement. Skeltons counter that Meagher County abandoned Soup Creek Road in 1895, when it refused to designate it a "county road," and that a prescriptive easement was never established.
¶21 First, we address whether Soup Creek Road was a public highway created under Montana statute. Prior to July 1, 1895, a public highway was established in one of four ways: 1) the act of the proper authorities as provided by the statute; 2) by prescriptive use by the public for the period of the statute of limitations (which was 5 years); 3) by the opening and dedication of a road by *374 an individual owner of ***112 the land; or 4) on a partition of real property. McCauley, ¶ 21 ; State ex rel. Dansie v. Nolan , 58 Mont. 167, 173, 191 P. 150, 152 (1920) (citing four ways to establish a public highway); Violet v. Martin , 62 Mont. 335, 342, 205 P. 221, 223 (1922) (noting statutory period) (overruled on other grounds).[2] To demonstrate that a way over the lands of another is a public road, the evidence must be convincing that the public have pursued a definite, fixed course, continuously and uninterruptedly, and coupled it with an assumption of control and right of use adversely under claim or color of right, and not merely by the owner's permission, over it for the statutory period. Violet , 62 Mont. at 342, 205 P. at 223.
¶22 In 1895, the legislature passed § 2600, The Codes and Statutes of Montana (1895) which provided, "All highways, roads, streets, alleys, courts, places, and bridges, laid out or erected by the public, or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways."
¶23 In determining whether public use of Soup Creek Road for more than five years prior to July 1, 1895, established Soup Creek Road as a public highway pursuant to § 2600 we look to McCauley , where we addressed interpretation of § 2600. McCauley , ¶¶ 22-25. In McCauley , the lower court found Tucker Gulch Road to have been used as a travel way by the public for decades prior to the enactment of § 2600. McCauley , ¶ 25. In affirming the lower court's determination that Tucker Gulch Road was a highway pursuant to § 2600, we concluded the intention of § 2600 "was to declare those only to be public highways which had been established by the public authorities, or were recognized by them and used generally by the public, or which had become such by prescription or adverse use at the time the provision was enacted ." McCauley , ¶ 23 (emphasis added). Here, as in McCauley , Soup Creek Road existed, was continuously used, and had been depicted on various surveys between 1868 and 1894-far more than the five years required by the statute of limitations before 1895.
¶24 In this case, the District Court appropriately found as such. However, the District Court then erred by conflating establishment of a county road with establishment of a public highway. Although the ***113 court correctly found Soup Creek Road existed and was continuously used for more than five years prior to 1895, it erroneously concluded no public right-of-way exists because the commissioners had declined to grant the 1894 petition to make Soup Creek Road a county road, and had also declined to extend Soup Creek Road in 1907. Pursuant to § 2600, one of the methods for establishing a public highway was by public use of the road for the period required by statute-in this case five years prior to July 1, 1895. Section 2600, The Codes and Statutes of Montana (1895); Violet , 62 Mont. at 342, 205 P. at 223. This requirement was clearly met. Although the District Court found Soup Creek Road to be clearly defined and in use by the public for decades prior to 1895, it concluded that the weight of evidence showed that Soup Creek Road had been abandoned.
¶25 We agree that under the established facts, Soup Creek Road was established as a public highway prior to 1895. In light of the District Court's findings, however, we must further determine whether Soup Creek Road, a public highway, was ever abandoned. "Section 2601, The Codes and Statutes of Montana (1895), required: 'All public highways, once established, must continue to be public highways until abandoned by order of the Board of Commissioners of the county in which they are situated, or by operation of law, or judgment of a court of competent jurisdiction.' "[3] McCauley , ¶ 28. In construing § 2601, this Court has concluded that no public highway established by public *375 use prior to 1895 should be vacated except by the public authorities. McCauley , ¶ 29 ; Barnard Realty Co. v. Butte , 48 Mont. 102, 110, 136 P. 1064, 1067 (1913). As there is no court judgment abandoning Soup Creek Road in the record,[4] and no argument for abandonment by operation of law, we address possible abandonment by public authorities:
One of the elements necessary to prove abandonment of public property by governmental entities is a showing of a clear intent to abandon. The conduct claimed to demonstrate this intent must be of character so decisive and conclusive as to indicate a clear intent to abandon. The conduct must be some affirmative official act, and not mere implication. Mere nonuse, even for extended periods of time, is generally insufficient, by itself, to indicate an intent to ***114 abandon.
McCauley , ¶ 30 (internal citations omitted). Further, the party claiming abandonment has the burden of proving that acts claimed to constitute abandonment demonstrate a decisive and conclusive intent to abandon the road. State v. Fisher , 2003 MT 207, ¶ 9, 317 Mont. 49, 75 P.3d 338 (finding no abandonment by government entity).
¶26 Section 2631 of The Codes and Statutes of Montana (1895) required the commissioners to maintain a road book for county roads and separately to "cause to be recorded as highways such roads as have become such by usage or abandonment to the public." While the commissioners did not designate Soup Creek Road a county road in 1895, thereby excluding it from the road book, they continued to "record it as a highway" elsewhere in county records.
¶27 Abandonment means a voluntary act involving a concurrence of act and intent. The act is the relinquishment of possession and the intent is a manifestation not to resume beneficial use of it. Neither of these elements alone is sufficient. Harland v. Anderson Ranch Co. , 2004 MT 132, ¶ 40, 321 Mont. 338, 92 P.3d 1160 (finding no abandonment by private party); Leisz v. Avista Corp. , 2010 MT 105, ¶ 8, 356 Mont. 259, 232 P.3d 419 (finding intent to abandon a road was not established where the road had been allowed to become overgrown and impassable so that a bulldozer would be required to reopen it, even though it was not in use and another access road had been created to replace the road at issue).
¶28 Skeltons concede a public highway cannot be abandoned through reverse adverse possession. They instead argue Soup Creek Road was abandoned when the county commissioners declined to make it a county road in 1895. Refusal to adopt a public highway as a county road does not equate to abandoning that public highway; in light of the other evidence, it establishes no more than an "implication" of abandonment. McCauley , ¶ 30. If Soup Creek Road had been abandoned by the 1895 declination by the commissioners, it made no sense for the commissioners to consider the petition in 1907 requesting the extension of Soup Creek Road as a county road or to continue to include it as a public highway in county records.
¶29 While Gibsons' predecessor-in-interest petitioned for that portion of Soup Creek Road extending into Gibsons' parcel to be abandoned in 1910, that petition did not request the portion of Soup Creek Road running through Lot 7 to be abandoned. No petition was ever filed to abandon any other part of Soup Creek Road, and the record is devoid of evidence any part of Soup Creek Road was officially abandoned other ***115 than that part traversing the Gibson parcel. Contrary to the District Court's finding that Soup Creek Road became a road to nowhere upon the abandonment of the portion crossing what is now Gibsons' parcel, it continued to be a road to Gibsons' parcel, available through use by the parties, their family and friends, and others.
¶30 If Soup Creek Road had been abandoned by the commissioners' 1895 decision not to make it a county road, then Gunn's 1910 request for abandonment of the road through his parcel was superfluous, as was the commissioners' grant of abandonment. It has long been the law in Montana that an "interpretation which gives effect is preferred *376 to one which makes void," § 1-3-232, MCA, and the "law neither does nor requires idle acts." Section 1-3-223, MCA. Gunn's request for and the commissioners' grant of abandonment of that part of Soup Creek Road on his parcel in 1910 can only be "given effect" if the commissioners' 1895 decision not to make Soup Creek Road a county road did not abandon the road. Gunn's request and the commissioners' grant were not "idle acts" only if the 1895 declination did not abandon the road.
¶31 Continual use by the parties, their predecessors-in-interest, and the public also undermines Skeltons' argument for abandonment. These facts clearly indicate Soup Creek Road was abandoned on Gibsons' parcel only, and the remainder of Soup Creek Road, including the portion across Skeltons' parcel, has never been abandoned. Having come to this conclusion, we need not address the parties' easement arguments.
¶32 The District Court's finding that Soup Creek Road was not a "public road" because Meagher County rejected a petition to designate it a county road in 1895 and Lewis and Clark County declined to act on the 1907 petition to extend the road is clearly erroneous. Rejection of a petition to declare Soup Creek Road a county road is not the same as a formal act of abandoning a public highway and is insufficient to demonstrate a decisive and conclusive intent to abandon the road. As we set forth in McCauley , to abandon a public highway there must be a showing of a clear intent to abandon-"The conduct claimed to demonstrate this intent must be of character so decisive and conclusive as to indicate a clear intent to abandon. The conduct must be some affirmative official act, and not mere implication." McCauley , ¶ 30 (internal citation omitted). The language from McCauley which appeared to confuse the District Court-"Mere nonuse, even for extended periods of time, is generally insufficient, by itself, to indicate an intent to abandon"-indicates there may be times when an exception applies to the general rule that non-use is insufficient to abandon a public highway. The phrase, "is generally ***116 insufficient, by itself" as used in McCauley is inconsistent with the requirement enunciated therein that there must be some "affirmative official act of the Board ... indicating an intent to abandon the road." McCauley , ¶ 34. As such, we clarify our holding in McCauley . The requirement is clear, existing both in statute and the McCauley decision, that a public highway cannot be abandoned by anything short of an order by the commissioners, operation of law, or court order. Non-use is not sufficient to prove intent to abandon.
¶33 Abandonment of Soup Creek Road as a public highway required affirmative action by authorized government officials. McCauley , ¶ 30. Soup Creek Road was created prior to 1868 and, because it was in general use for more than five years prior to the passage of § 2600, The Codes and Statutes of Montana (1895), it became a public highway by operation of statute. The only portion of Soup Creek Road which was ever abandoned was that part passing through Gibsons' parcel. The remainder of Soup Creek Road, including the portion crossing Skeltons' Lot 7, continues to be a public highway.
CONCLUSION
¶34 Soup Creek Road has been a public highway since the mid-1800s and only that part which passes through Gibsons' parcel was abandoned.
¶35 Reversed and remanded for entry of judgment consistent with this Opinion.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.

At one point there was a U.S. Forest Service spur servicing Gibsons' parcel by a steep mountain pass. Gibsons' predecessor-in-interest died attempting to traverse this road, at which point the Forest Service closed it. Rosana Skelton noted this at trial and explained it was "a very dangerous route."

Violet , 62 Mont. at 342, 205 P. at 223, states the statutory period changed in 1893 to 10 years, but we could not find a change in this statute of limitation in the 1893 codes and believe it was a scrivener's error that should read 1895. Ultimately, it is immaterial if the statute was for 5 or 10 years from 1893-1895 because the road had been in use for at least 25 years by 1893.

Section 2601 is nearly identical to § 7-14-2615(1), MCA, the present abandonment statute.

Other than the portion crossing the Gibson parcel in 1910.