## BARNARD REALTY CO., APPELLANT, *v.* CITY OF BUTTE, RESPONDENT.

(No. 3,271.)

(Submitted September 17, 1913. Decided October 15, 1913.)

[136 Pac. 1064.]

*Quieting Title—Cities and Towns—Streets and Alleys—Prescription—Burden of Proof—Evidence—Adverse Use—Insufficiency—Statutes.*

Cities and Towns—Streets and Alleys—Prescription—Burden of Proof.
1. Defendant city, asserting title to real property by reason of a right acquired through adverse use, had the burden of establishing, by direct or circumstantial evidence, every element necessary to constitute its alleged claim, one of which elements was the fixing of a definite date at which the statute of limitations began to run.

Same—Adverse Use—Evidence.
2. Where the only evidence tending to show the date at which defendant city assumed to exercise control over land, title to which it asserted under the doctrine of prescription, by the construction of a ditch thereon, was to the effect that the work had been done in June or July of a certain year and that it required two or three days to complete it, the only rational conclusion deducible therefrom was that it was not done until the last two or three days of July; *held,* therefore, that the statute was not put in motion until July 28 of that year.

[As to the establishment of highways by prescription, see note in 57 Am. St. Rep. 744.]

Same—Adverse Use—Insufficiency.

3. Under section 1340, Revised Codes (sec. 2603, Pol. Code, 1895), the mere use of land by the public as a street for the statutory period, not coupled with an assumption of jurisdiction over it by the city authorities, was insufficient to clothe the city with title by prescription.

Same—Public Highways—Definition—Statutes.

4. *Obiter:* By section 1337, Revised Codes (sec. 2600, Pol. Code 1895), those roads only are declared to be public highways which had been established by the public authorities or were recognized by them and used generally by the public, or which had become such by prescription or adverse use, at the time of its enactment.

Same—Streets and Alleys—Control—Statutes.

5. *Held,* that though sections 1337 and 1340, Revised Codes, are parts of an Act relating in terms to county roads (Laws 1903, Chap. 44), the legislature in providing in the former that not only roads, but also streets, alleys, *etc.,* should be deemed public highways, and in the latter that no highway as thus defined should be vacated otherwise than as provided therein, and no route of travel should thereafter become a highway by mere use not coupled with a declaration to that effect by the county commissioners, impliedly ordained that use of a strip of land within the limits of a city or town for street or alley purposes should not be deemed adverse until assumption of jurisdiction over it by the city authorities; *held,* further, that by naming, in the latter section, the board of county commissioners only as the agency through which roads, streets, *etc.,* may be established or vacated, it was not intended to invest the board with, and deprive the city authorities of, control over streets, alleys, *etc.* (See, also, opinion on motion for rehearing.)

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by the Barnard Realty Company against the city of Butte to quiet title. Decree in favor of defendant. Plaintiff appeals from it and an order denying its motion for a new trial. Reversed and remanded.

*Messrs. Edwin M. Lamb* and *E. B. Howell,* for Appellant, submitted a brief, and argued the cause orally.

In behalf of Respondent there was a brief by *Messrs. John A. Smith, N. A. Rotering,* and *H. Lowndes Maury; Mr. Alex Mackel,* of counsel, argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff brought this action on July 19, 1911, to obtain a decree quieting its title to the property described in the com-

plaint, which is situated within the corporate limits of the city of Butte and consists of a strip of land extending from the south line of the alley immediately south of Galena street to the north line of Silver street. Its boundaries are indicated on the subjoined diagram by the heavy lines inclosing the area A, B, C, D, a part of the area designated as the Barnard Placer, the dotted line being the western boundary of the latter. The question involved is whether the described area is a part of Alabama street. The defendant, admitting that the record title is in plaintiff, pleaded as a defense that for the full period of ten years prior to the bringing of the action it had been in the open, notorious, uninterrupted, exclusive and adverse possession of the disputed area and used the same as a public street, and was therefore the owner of an easement over it for a public street. The district court found the issues in favor of the defendant and entered a decree accordingly. The plaintiff has appealed from the decree and an order denying its motion for a new trial.

Counsel have made many assignments of error in their brief, but since the only substantial argument made is confined to the assignment that the evidence is insufficient to sustain the findings, we shall deem the other assignments waived and devote our attention to the single question thus submitted.

The evidence introduced by the defendant tends to establish the following: The area shown on the diagram to the north of the alley and east of the dotted line was originally a part of the Barnard Place. In the year 1889 Barnard, the owner, caused it to be subdivided into blocks and lots and made it an addition to the city. The portion of this area north of the south line of the alley was thus formally dedicated to the use of the public, presumably as an extension of Alabama street from the north. The dedication apparently included also the extension of the alley to the east. The area to the west of the dotted line from Galena street south is embraced in three distinct additions made to the city by other persons at about the same date, the portion north of the alley being a part of the Columbia Addition, that

between the alley and Mercury street a part of the Saturn Addition, and that further south a part of the Neptune Addition.

All the portions of these areas designated as streets and alleys up to the dotted line were thus formally dedicated to public use. · The rest of the Barnard Placer east of the dotted line has been uninclosed and accessible to public travel. The fractional lots lying west of the line have been held or sold by the respective plat owners as fractional lots, the plaintiff and its predecessor having at all times refused to sell any portion of the area between the dotted line and the west line of the disputed area. Many of the lots in the Saturn and Neptune Additions are now occupied by dwellings, some of which were erected more than ten years prior to the bringing of this action, and others of them within ten years. One of these, situated on lot 1 in the Saturn Addition at the corner marked "A," fronts to the east. A narrow sidewalk constructed of boards extends from the north line of Silver street along the course of the dotted line to the south line of Mercury street. This has been constructed from time to time by owners of lots bordering on the Barnard Placer, to facilitate access toward Galena street from the south, but without permission of plaintiff or its predecessor. Extending north from Mercury street there is a sidewalk which follows the direction of the east line of the Saturn Addition, and encroaches slightly upon the disputed area. It does not appear who constructed this. During the year 1905 the area designated as Silver street east of the dotted line was, as a result of negotiations had with Barnard, opened as a public street and has since been graded and used as such. These negotiations had no relation to an extension of Alabama street, the purpose entertained by the city apparently being only to extend Silver street to the east to accommodate the residents along it toward the west. Some time subsequent to the beginning of the year 1901 a ditch theretofore constructed along the west side of the dedicated portion of Alabama street and probably across the alley was extended south to and across Silver street. This was done by men employed by the street commissioner of the city and at the expense of the city, the purpose being to divert the surface water which tended to follow the natural slope of the country

toward Missoula Gulch on the east and prevent it from cutting up the surface of the roadway toward the south and obstructing travel in that direction. At that time there were two lines of travel well defined, one on the east side of the line of the ditch and the other west of it, the one or the other being used according as it suited the convenience of the traveler. Later culverts were constructed at the points indicated on the diagram to facilitate access to the streets and alleys toward the west. Prior to 1889 placer mining operations were extended from Missoula Gulch toward the west as far as the west line of the disputed area and north to about the south line of Mercury street, leaving the surface in such a condition, by reason of excavations and scattered debris, that travel over the area south to Silver street, though practical, was not convenient. The surface of this portion was leveled off by the city in 1905 and 1906. About the same time lines of wires were erected along the east and west sides of the disputed area, to supply the residents to the west with light and telephone service. Arc-lights were thereafter maintained by the city at Silver and Mercury streets. All of these improvements were made without the consent of the plaintiff, though its officers and agents had knowledge of them at the time. As a result, the area gradually assumed the appearance of an improved, much-traveled street. Sometime during the years subsequent to 1900 the city caused Mercury street to be graded. The grading operations stopped at the west boundary of the Barnard Placer. The disputed area has never been made to conform to the grade established for that street. Later Silver street was graded throughout. Much evidence was introduced as to the character and amount of travel over the disputed area from the time the various additions were made to the city. If, however, the testimony of defendant's witnesses be taken as uncontroverted and at its utmost worth, it does not tend to establish a definite, fixed line of travel over any part of the area prior to 1896. As late as that year there were no buildings toward the west. The area in that direction was unoccupied, and persons having occasion to travel south and west from

Galena street, after reaching the alley, took that direction which best suited their convenience and did not usually follow any definite, fixed route. Gradually, as the lots in these additions became occupied during the subsequent years, travel was forced eastward until it finally followed uniformly the two lines parallel with the line of the ditch. This had been the condition only from a date not earlier than the year 1896. The date at which the ditch was constructed was fixed by the defendant's one witness who testified on the subject as in the summer of 1901—in June or July. The construction work occupied two or three days. One of plaintiff's witnesses, who was assistant city engineer from 1898 to 1906 and city engineer during 1908 and 1909 and was familiar with the streets of the city, stated that the ditch was not constructed until 1907 or 1908. These were the only witnesses who undertook to fix a definite date at which the city authorities assumed to exercise control over the disputed area.

The district court did not make special findings, but found generally for the defendant. It proceeded upon one of two theories, viz.: That the assumption of jurisdiction by the city authorities by the doing of this work was definitely shown by the first witness to have taken place more than ten years prior to the commencement of the action, and hence that the right by prescription had then already accrued; or that it was wholly immaterial when the city authorities assumed jurisdiction and that a mere user by the public for the statutory period of ten years was sufficient to establish the right. Without considering [1, 2] the testimony introduced by the plaintiff as to when the work was done, it seems clear that the defendant's evidence does not warrant any finding other than that it was commenced and finished during the last three days of July, 1901. Since the defendant relied exclusively upon a right acquired by adverse use, it assumed the burden of establishing this right, by showing every element necessary to constitute its title. (1 Cyc. 1143.) One of these elements was to fix, by direct or circumstantial evidence, a definite date at which the statute began

to run.   The statement of the witness left the court no basis for a conclusion as to any definite date within the extreme limits covered by the two months mentioned.   It is clear, therefore, that the only conclusion the court could reach was that the work was not done until the last two or three days of July, because there was no basis for fixing any earlier time.   The statute was, upon this theory, not put in motion earlier than July 28, 1901.

This brings us to the question whether mere user by the public for the statutory period, without substantial recognition by [3] the public authorities, is sufficient to establish a highway by prescription.   The answer to this inquiry must, we think, be found by reference to the provisions contained in sections 1337 and 1340 of the Revised Codes.   These are the following: "All highways, roads, streets, alleys, courts, places and bridges laid out or erected by the public or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways."   (Sec. 1337.)   "A highway laid out and worked and used as provided in this Act must not be vacated or cease to be a highway  until so ordered by the board of county commissioners of the county in which said road may be located; and no route of travel used by one or more persons over another's land shall hereafter become a public road or byway [highway?] by use, or until so declared by the board of county commissioners, or by dedication by the owner of the land affected."   (Sec. 1340.)   These provisions were first enacted as sections 2600 and 2603 of the Political Code of 1895.   Whatever may have been the rule touching the establishment of public highways by prescription prior to the date of their adoption, they declared what should be considered highways at the time of their enactment and how a highway might thereafter be established.   By the first section all highways, roads, streets, alleys, *etc.*, were declared public highways (1) which had been laid out or erected by the public (that is, by the public authorities and at public expense); (2) which were then traveled or used by the public; or (3) which had been laid out or erected

by others (by private persons) and dedicated or abandoned to the public. We are not now concerned with the question [4] whether it was the intention of the legislature to declare all roads then in use to be public highways, without reference to how long the use had continued or what the character of use had been. We think, however, as we said in *State* v. *Auchard,* 22 Mont. 14, 55 Pac. 361, that the intention was to declare those only to be public highways which had been established by the public authorities, or were recognized by them and used generally by the public, or which had become such by prescription or adverse use at the time the provision was enacted. Any other view would, in our opinion, render the legislation open to serious constitutional objection (Const., sec. 14, Art. III). Be [5] this as it may, the second section clearly evinces the intention that no highway falling within the enumeration contained in the former section should be vacated except by the public authorities, and that no route of travel should thereafter become a public right until declared so by the public authorities or had been made so by dedication by the owner of the land affected. The term "now," as used in the first provision, clearly indicates the intention to leave intact such rights as the public had already acquired, and as clearly does the use of the term "hereafter," in the latter section, indicate an intention that rights of the same kind should not in the future be acquired except by the methods therein prescribed. The expression, "one or more persons," can mean no more nor less than any number of persons, and therefore is necessarily as broad in its meaning as the term "public," employed to indicate the extent of the use mentioned in the first section. By these enactments the legislature explicitly declared it to be the rule that after July 1, 1895, when the Codes went into effect, a highway could not be established by use unless the use should be accompanied by some action on the part of the public authorities having jurisdiction of the subject, tantamount to a declaration that the particular road was a public highway. The provisions were copied substantially from the Political Code of California, where they appear

as sections 2618 and 2621.    We have not been referred to any decision by the supreme court of that state, construing the latter section.    In *Leverone* v. *Weakley,* 155 Cal. 395, 101 Pac. 304, cited by counsel, it was merely referred to as not in anywise in conflict with the theory that a highway may be established by an implied dedication of it by the owner of the land affected by it.    No question of dedication is involved in this case.    In North Dakota a statute containing the provision, "no road traveled or used by any one or more persons over another's land shall become a public highway by use."    The supreme court of that state construed it as meaning that no highway could be established by prescription after its enactment, unless the right had theretofore fully matured by lapse of time. · (*Walcott Township* v. *Skauge,* 6 N. D. 382, 71 N. W. 544; *Burleigh County* v. *Rhud,* 23 N. D. 362, 136 N. W. 1082.)    It will be noted, however, that the Dakota statute does not contain the clause found in our statute, *viz.:* "Until so declared by the board of county commissioners, or by dedication by the owner of the land affected"; hence we are not required to adopt *in toto* the construction given by the court to the Dakota statute, our own evidently meaning that use, coupled with a substantial recognition of its public character by the public authorities, is sufficient to put the statute in motion.

But counsel insist that under other provisions of the Code, the control of streets and other highways within the limits of a city or town is lodged exclusively in the city or town authorities, and hence that section 1340 has no application [6] to this case.    This argument proceeds upon the assumption that mention in this section of the board of county commissioners, which body has control of county roads only, excludes the notion that the legislature intended that the provision should apply to streets in cities and towns.    That the streets of these municipalities are subject to the control of the municipal authorities is true (sec. 3259, Rev. Codes).    That the provision in question does not in terms refer to them is also true.    But, taking sections 1337 and 1340 together, a legislative intention is clearly evinced

to provide a general rule by which highways of every character may be established or vacated. The latter section has reference to those highways enumerated in the former, to streets, *etc.*, as well as to county roads; and though the only public authority mentioned is the board of county commissioners, it cannot be conceived that the legislature by this reference alone intended that this board should thereafter have control of the streets of cities and towns, or that these should be established by methods other than those prescribed for the establishment of county roads.

Counsel also insist that the cases of *Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565, and *Lockey* v. *City of Bozeman,* 42 Mont. 387, 113 Pac. 286, have definitely established the rule applicable to the condition of facts presented in this case, and that it is conclusive against the position assumed by the plaintiff. Each of these cases, however, involved rights which had been established and matured prior to the enactment of the provision in question here. No reference was made in either of these cases to the provision found in section 1340, *supra,* nor was it cited or commented upon by counsel. The case of *State* v. *Auchard, supra,* also involved a right which was alleged to have become matured prior to July 1, 1895. In the case at bar for the first time has the provision been invoked, rendering a determination of its meaning and application necessary. Neither was it referred to in the case of *Montana Ore Purchasing Co.* v. *Butte & B. etc. Min. Co.,* 25 Mont. 427, 65 Pac. 420. That case was decided upon the controversy as presented by counsel. If the provisions of the statute had been invoked by the defendant, it would have been a conclusive answer to the plaintiff's contention, irrespective of the question actually decided.

During the oral argument counsel for plaintiff suggested that the answer is wholly insufficient to present the issue of adverse use by the public, in that it asserts title in the city to the right of way claimed. The conclusion we have reached renders it unnecessary to notice this contention. Moreover, the question involved is not discussed in the printed argument.

The decree and order are reversed and the cause is remanded to the district court for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

ON MOTION FOR REHEARING.

(Submitted November 7, 1913.    Decided December 11, 1913.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In their petition for a rehearing filed by counsel for defendant in this case, it is said that the original opinion has left it uncertain whether or not the several provisions of the Revised Codes (sections 3212, 3213, 3259, 3466, 3479 and 3480), relating to the power of the authorities of incorporated cities and towns to establish, open, widen and vacate streets, are still in force. Counsel quote from the opinion the following: "But, taking sections 1337 and 1340 together, a legislative intention is clearly evinced to provide a general rule by which highways of every character may be established or vacated," and then proceed to argue that if this passage is taken literally, it implies that hereafter the streets of cities and towns will be exclusively under the control of the boards of county commissioners. The passage, read in connection with what is said elsewhere in the opinion, is not susceptible of any such interpretation. The Act of 1903, of which sections 1337 and 1340 are a part, applies to county roads only. This is made clear by reference to its title. The same may be said of the chapter of the Political Code of 1895 from which these sections were taken. While this is true, we think the legislature, in declaring that travel by one or more persons over a given route outside of an incorporated city or town is not in itself, in the absence of an assumption of jurisdiction by the board of county commissioners by some definite action, sufficient to constitute adverse use of it as a highway, impliedly declared also that use of a street or alley within the limits

of an incorporated city or town shall not be deemed adverse until jurisdiction has been assumed by definite action by the city or town authorities; and that in either case a highway once established cannot be vacated except by an order of the public authorities having jurisdiction over it.

*Rehearing denied.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.