No. 01-869

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 326

NANCY A. SMITH,

        Plaintiff and Appellant,

   v.

THOMAS A. RUSSELL, LORI R. RUSSELL,
COUNTY OF TOOLE and CITY OF SHELBY,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and for the County of Toole, DV-00-23
The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Brian D. Bixby, Shepard Davidson, Burns & Levinson LLP, Boston, Massachusetts

      For Respondents:

          Merle J. Raph, Toole County Attorney, Rae V. Kalbfleisch, Nelson & Kalbfleisch, Shelby, Montana, William E. Hunt, Shelby City Attorney, Shelby, Montana

Submitted on Briefs:  May 9, 2002

Decided:  November 25, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Nancy Smith appeals a ruling by the Ninth Judicial District, Toole County, declaring Country Club Road a public way.  We affirm.

¶2     We restate the issue on appeal as: Did the District Court err when it ruled that Country Club Road is a public way?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In 1939 and 1940, several members of the Shelby Country Club, conveyed title to 160 acres of land, the Northwest Quarter (NW 1/4) of Section Twenty-eight (28), Township Thirty-two (32) North, Range Two (2) West, M.P.M., to the City of Shelby.  According to Shelby City Council minutes dated March 3, 1941, a road was graded "down the Main [S]treet hill between Ninth Avenue West and the park on the west side of the city" by James D. Rodgers, who operated the county bulldozer.  The city paid his wages and furnished gas and oil for the dozer.   The road that was graded is what is now known as Country Club Road (hereinafter referred to as "Club Road").

¶4     At the time the land conveyances were made, it appears that the club members understood and believed that the City would  "beautify the property as a park, and at the same time . . . lease it to the Country Club for use as a golf course and for the erection of a club house."  Minutes from the April 21, 1941 Shelby City Council meeting.  After the land was conveyed, the club members built a club house with their own funds.  Thereafter, it became apparent that the City would not be able to secure Works Progress Administration (WPA) funding to "beautify the property as a park."  *Id.*  In 1941, the Shelby City Council reconveyed the 3.51 acres where the club house was built to the Shelby Country Club.  The remaining 156.41 acres was deeded to the Shelby Country Club on April 12, 1949.

¶5     In 1968, the entire 160 acres was conveyed to the Marias Valley Golf and Country Club, which in turn sold it to Dr. Stephen A. Adaskavich (Dr. Adaskavich) that same year. Dr. Adaskavich, through three separate deeds in 1976 and 1983, conveyed 11.75 acres to the Montana Conference of the Seventh Day Adventists. In 1992, Dr. Adaskavich died and the remaining acreage was transferred to his daughter, Nancy Smith (Smith), on November 24, 1998. Two years later, Thomas and Lori Russell (the Russells), purchased the 11.75 acres from the Seventh Day Adventists for one dollar. Tom Russell subsequently petitioned the City Council, and the petition was granted, for a right of way easement to access their property from a public way frontage road. This gave the Russells access to their property from a different road other than Club Road; however, the Russells continued to use Club Road.

¶6     Smith filed a complaint against the Russells on August 3, 2000, asking the trial court to declare Club Road a private road and for damages for the Russells' use of Club Road. On January 2, 2001, the Shelby City Council voted to annex Club Road into the corporate limits of the City of Shelby. The City of Shelby then intervened in the Smith v. Russell proceedings as a defendant to protect the public interest on January 4, 2001. The following day, Toole County also intervened as a defendant. Smith moved for summary judgment on May 9, 2001. The Russells, the City of Shelby, and Toole County also moved for summary judgment a month later. The District Court granted the defendants motion for summary judgment declaring Club Road to be a public road. Smith now appeals that decision.

## STANDARD OF REVIEW

¶7     Our standard of review in appeals from summary judgment rulings is *de novo*. *Motaire v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156

(citing *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785).  When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P.  *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## DISCUSSION

¶8      *Did the District Court err when it ruled that Club Road is a public way?*

¶9      Smith argues that Club Road is not a public road because it was created as a park access road for the James A. Johnson Memorial Park (the Memorial Park).  The Russells argue that there is no evidence in the stipulated record establishing that the property or Club Road built upon the property ever actually became part of the Memorial Park; therefore, Club Road is a public way.

¶10      Although the Russell's contention, that there is no evidence in the stipulated record specifically establishing that the Property or Club Road built upon it ever became part of the Memorial Park is correct, the Russells do admit, and the record reflects, that the Shelby City Council discussed turning the property into a park project with WPA funds.  Indeed, according to Shelby City Council minutes dated April 21, 1941, when the property was originally given to the City of Shelby it was

> transferred under the belief that the property could be improved and beautified and used for a dual purpose, that is, as a park for the welfare [of the citizenry] and as a gathering place of citizens of the community, and at the same time leased back to the Country Club for use as a golf course.

Unfortunately, there is no Montana case law supporting Smith's supposition that a municipality does not have the power to convert any portion of property dedicated and accepted as a public park into a public way because such a conversion would be inconsistent with the use of the land as a park.

4

¶11    We, therefore, agree with the District Court and the Russells and hold that Club Road is a public highway, but we do so in reliance on § 1612, R.C.M. (1921), and not on § 32-103, R.C.M. (1947) as the District Court did.  Although the statutes are substantially the same, § 1612 was in effect at the time Club Road was erected and as such, should be the law used to determine Club Road's status.

¶12    Section 1612 was first enacted as § 2600 of the 1895 Political Code.  It was later renumbered as § 1337, R.C.M. in 1907 and then § 1612, R.C.M., in 1921.  Excepting the addition of the word "lanes" in 1921, at all times the section read:

> All highways, roads, lanes, streets, alleys, courts, places and bridges, laid out or erected by the public, or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways.

¶13    In *Barnard Realty Co.  v. Butte* (1913), 48 Mont. 102, 136 P. 1064, we held that under § 1337 and § 2600,

> all highways, roads, streets, alleys, etc., were declared public highways (1) which had been laid out or erected by the public (that is, by the public authorities and at public expense); (2) which were then traveled or used by the public; or (3) which had been laid out or erected by others (by private person) and dedicated or abandoned to the public.

*Barnard*, 48 Mont. at 109-10, 136 P. at 1067.  In *Peasley v. Trosper* (1936), 103 Mont. 401, 405, 64 P.2d 109, 110, we reaffirmed the above holding including § 1612, M.C.A. (1912).

¶14    The record reflects that Club Road was "laid out or erected by the public" and maintained by public funds and has been used extensively by the public.  City Council minutes from March 3, 1941, indicate that

> Mr. James D. Rogers[,] who operates the county bulldozer, was present and said that the County commissioners would let the city have the use of the machine, for grading down the Main street hill between Ninth Avenue West and the park on the west side of the city, or to landscape and improve that

5

park, if the city would pay the operators wages and furnish gas and oil for the dozer.

The Council agreed and Mr. Rogers was "employed to go ahead . . . and make a new roadway to the golf club house."

¶15     In addition, numerous affidavits support the proposition that Club Road was maintained by the City and used by the public. Several persons from the Toole County Road Department made clear in their affidavits that the county maintained Club Road for over fifty years. One such affidavit reads that the City "periodically maintained and cleaned the barrow pits and ditches and removed snow from the Country Club road."

¶16     Many affidavits also show that the general public have used Club Road extensively for the last fifty years. Citizens of Shelby swore in their affidavits that during the forties, fifties and sixties, "[t]he clubhouse was a social center for residents of Shelby and for members of the public for twelve months of the year." The citizens further swore that people who were not members of the Shelby Country Club regularly golfed at the Club's golf tournaments and regularly used the Shelby Country Club "without any invitation or permission from the Shelby Country Club or payment of dues or green fees."

¶17 Aside from the Clubhouse, the Seventh Day Adventist School and the Shelby Trap Club, each attracted members of the general public in later years. The school, in operation from 1972 until 1992, "was always open to the public and . . . more than [f]ifty percent (50%) of [the] school was composed of public students who were not affiliated with [the] church." The Shelby Trap Club, located on the old golf course, had tournaments which members of the public from Shelby and surrounding towns and Canada would attend. Also, during the week, "approximately 15 to 20 people would be engaged in shooting clay pigeons and members of the public would watch the competition." To attend the school and the trap club functions, members of the general public used Club Road.

¶18 Smith also argues that Club Road lost any public character it had, in another words it was abandoned, when the city conveyed the failed park property back to Shelby Country Club, a non-public entity.

¶19 Section 2601 of the Political Code of 1895, was the first Montana statute to address abandonment of public highways. It was subsequently renumbered and amended as § 1338, R.C.M. (1907), § 1614, R.C.M. (1921), and then § 32-105, R.C.M. (1947). Throughout the numbering changes and amendments, the statute remained substantially the same for over fifty years. The statute as originally enacted read: "[a]ll public highways, once established, must continue to be public highways until abandoned by order of the board of commissioners of the county in which they are situated, or by operation of law, or judgment of a court of competent jurisdiction." Section 32-105, R.C.M. (1947), the abandonment statute in effect when Club Road was purportedly abandoned in 1949, read:

> All public highways once established must continue to be public highways until abandoned by operation of law, or by judgment of a court of competent jurisdiction, or by the order of the board of county commissioners of the

7

county in which they are situated; but no order to abandon any highway shall be valid unless preceded by due notice and hearing as provided in this act; and no state highway can be abandoned except on the joint order of the board of county commissioners and the state highway commission.

¶20 This Court has held that those by-ways determined to be public highways by § 2600 "should [not] be vacated except by the public authorities." *Barnard*, 48 Mont. at 110, 136 P. at 1067. In subsequent case law upholding the aforementioned, *McCauley v. Thompson-Nistler*, 2000 MT 215, ¶¶ 28-29, 301 Mont. 81, ¶¶ 28-29, 10 P.3d 794, ¶¶ 28-29, we also held that the intent to abandon required by § 2601 is the same today and that to show abandonment the "intent [to abandon] must be of character so decisive and conclusive as to indicate a clear intent to abandon." *McCauley*, ¶ 30 (citing *Rumph v. Dale Edwards Inc.* (1979), 183 Mont. 359, 600 P.2d 163). Furthermore, "[t]he conduct must be some affirmative official act, and not mere implication." *McCauley*, ¶ 30 (citing *City of Billings v. O.E. Lee Company* (1975), 168 Mont. 264, 542 P.2d 97).

¶21 There has been no showing here of a clear intent to abandon. While the City's reconveying the property to the Shelby Country Club may at first glance appear to denote abandonment, the record reflects that the City has continued to maintain and repair Club Road when needed. The reconveyance would seem to rise only to the level of "mere implication," and not an "affirmative official act." *McCauley*, ¶ 30. In addition, as discussed above, numerous individuals have attested that the general public has used Club Road continually for fifty years whether to play golf, attend school, or shoot trap.

¶22     Accordingly, we affirm the District Court's decision.


                                                /S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

/S/ JIM RICE