JUSTICE NELSON,
specially concurring.
¶70 The specific issue presented on this appeal is whether the District Court erred in its determination that, as a matter of law, the federal government created a public road by express reservation in the Cobban Placer documents of conveyance. I believe the Court’s Opinion correctly and fully resolves this issue.
¶71 As for OLR’s R.S. 2477 theory, the District Court considered this theory and determined that “questions of material fact exist and the issue cannot be resolved by summary judgment.” The Dissent states that the District Court erred in this respect. Dissent, ¶ 107. This remark, however, is gratuitous at best, given that neither party has appealed from the court’s ruling. Indeed, neither party raises OLR’s R.S. 2477 theory on appeal. The Dissent acknowledges this point. Dissent, ¶ 107. Nevertheless, the Dissent offers a lengthy argument that a public road across the Cobban Placer was created under R.S. 2477 as a matter of law. Dissent, ¶¶ 102-130. A review of the record reveals that the Dissent’s argument builds on and further develops the *425 arguments articulated by OLR in its Response in Opposition to Defendants’ Motion for Summary Judgment.
¶72 In addition, the Dissent addresses the matter of termination. Dissent, ¶¶ 131-132. The Landowners argued this issue in their motion for summary judgment, claiming that any public road that may have existed across the Cobban Placer was extinguished by reverse prescription. The District Court ruled that the parties had “presented conflicting evidence to this Court regarding these questions of material fact [related to prescriptive use]” and, accordingly, denied summary judgment on this issue. The Landowners have not appealed from this ruling.
¶73 The propriety of the Dissent’s approach in light of the procedural posture of this case is self-evident and requires no further comment. That said, to the extent the Dissent’s various articulations of the law related to R.S. 2477 could be viewed as a guidebook for subsequent proceedings in the District Court on remand, I believe it is necessary and appropriate to explain why the Dissent’s R.S. 2477 analysis founders in several respects.
¶74 The Dissent stresses the principle that a mining claimant took title to his claim subject to any valid easements against the United States existing at the time the claim was located. Dissent, ¶¶ 105,119, 122, 124. No one disputes this point. Indeed, “a grant by the United States conveys all the interest that the United States has at the time of the grant, and no greater interest. . . . [T]he United States cannot, by patent, convey to any grantee a greater right than it has at the time of such grant.” Murray v. City of Butte, 7 Mont. 61, 68, 14 P. 656, 657 (1887) (citing Butte City Smoke-House Lode Cases, 6 Mont. 397, 12 P. 858 (1887), and Deffeback v. Hawke, 115 U.S. 392, 6 S. Ct. 95 (1885)). Thus, a valid acceptance of the R.S. 2477 offer prior to the date of the location upon which a patent was based was “valid against the government, and therefore valid against the subsequent grantees of the government, who must take the land in question, subject to any easement which was valid against the government at the time of the location.” Murray, 7 Mont. at 68-69, 14 P. at 657; accord City of Butte v. Mikosowitz, 39 Mont. 350, 355, 102 P. 593, 595 (1909). Conversely, “where one acquires from the United States legal or equitable title prior to an effective acceptance of the [R.S. 2477] grant or dedication, he and his successors in interest do not hold subject to an easement for the subsequent establishment of a highway.” United States v. Pruden, 172 F.2d 503, 505 (10th Cir. 1949) (emphasis added).
¶75 Of course, these relatively unremarkable propositions assume the *426 very matter to be decided under OLR’s R.S. 2477 theory-namely, whether there was a valid acceptance of theR.S. 2477 offer prior to February 20,1892, when the Cobban Placer was located. The Dissent asserts that John T. Reese accepted the offer. Dissent, ¶¶ 119, 139. Yet, the Dissent offers no basis whatsoever for this assertion other than the fact that Reese located the Plymouth Rock Placer in 1889 and the Plymouth Rock Extension Placer in 1890. The legal question of whether the R.S. 2477 offer was validly accepted cannot be answered based on nothing more than a document stating that someone located a mining claim at a particular place and time. Rather, the answer to this question depends on the legal rules governing the creation of public highways and on actual evidence-not mere conjecture-that these rules were satisfied. Standage Ventures, Inc. v. Arizona, 499 F.2d 248, 250 (9th Cir. 1974).
¶76 R.S. 2477 states, in its entirety, as follows: “The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.” It is well-settled that R.S. 2477 is “an offer of the right of way for the construction of a public highway on some particular strip of public land.” State ex rel. Dansie v. Nolan, 58 Mont. 167, 173, 191 P. 150, 152 (1920). It is also well-settled that this offer can only be accepted by the “construction” of a public highway in a manner authorized by the laws of the state in which the land is situated. Nolan, 58 Mont. at 173, 191 P. at 152. The cases standing for these points are legion. See Pruden, 172 F.2d at 505 (citing cases); Moulton v. Irish, 67 Mont. 504, 507, 218 P. 1053, 1054 (1923) (and cases cited therein); hut see Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 768 (10th Cir. 2005) (concluding “that federal law governs the interpretation of R.S. 2477, but that in determining what is required for acceptance of a right of way under the statute, federal law ‘borrows’ from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent”).
¶77 Here, the Cobban Placer left the public domain on February 20, 1892, when William F. Cobban and William H. Lewis located this mining claim. See Opinion, ¶¶ 3, 5. Therefore, in order to determine whether there was a valid acceptance of the R.S. 2477 offer as applied to the Cobban Placer, it is necessary first to identify the methods for establishing a public highway under Montana law in the years prior to 1892. See Richter v. Rose, 1998 MT 165, ¶ 27, 289 Mont. 379, ¶ 27, 962 P.2d 583, ¶ 27; Southern Utah Wilderness Alliance, 425 F.3d at 771. We identified those methods in Nolan:
*427 Prior to July 1, 1895, a public highway could have been established either by the act of the proper authorities, as provided by the statute, or by use by the public, for the period of the statute of limitations as to lands, of the exact route confined to the statutory width of a highway, later claimed to be a public highway, or by the opening and dedication of a road by an individual owner of the land, or on a partition of real property.
Nolan, 58 Mont. at 173, 191 P. at 152; accord Richter, ¶ 28.
¶78 It has not been argued in this case that a public road was established across the Cobban Placer prior to 1892 “by the act of the proper authorities” or “on a partition of real property.” Indeed, the District Court observed that OLR had not raised either of these two theories. As for “opening and dedication” by an individual landowner, this Court has previously held that R.S. 2477 does not come within the meaning of “dedication by the owner of the land” as contemplated by Montana highway laws. See Nolan, 58 Mont. at 172-73, 191 P. at 152. That leaves only “use by the public, for the period of the statute of limitations as to lands, of the exact route confined to the statutory width of a highway, later claimed to be a public highway.” Prior to July 1, 1895, that period was five years.[1] See Nolan, 58 Mont. at 175, 191 P. at 153; Montana Ore-Purchasing Co. v. Butte & Boston Consol. Min. Co., 25 Mont. 427, 430, 65 P. 420, 421 (1901). Accordingly, OLR was required to demonstrate, by clear and convincing evidence (see Watson v. Dundas, 2006 MT 104, ¶ 41, 332 Mont. 164, ¶ 41, 136 P.3d 973, ¶ 41), that the alleged public road across the Cobban Placer existed since at least February 20, 1887, and that the public used this road in the requisite manner for a five-year period. See Nolan, 58 Mont. at 174, 191 P. at 152-53 (“If, therefore, the offer is accepted by user under the laws of this state, that user must be shown to have continued over the exact route claimed, for the statutory period prior to July 1, 1895.”); see also City of Butte v. Mikosowitz, 39 Mont. 350, 355, 102 P. 593, 595 (1909) (concluding that use by the public generally as a roadway for five years or more prior to July 1, 1895, was sufficient to accept the R.S. 2477 offer).
¶79 With respect to the character and extent of the use, it must be *428 shown that the road was “known and used as a highway common to all the people.” State v. Auchard, 22 Mont. 14, 16, 55 P. 361, 362 (1898) (per curiam) (citation and internal quotation marks omitted). Furthermore, OLR’s evidence must be “ ‘convincing’ ” that the public pursued “ ‘a definite, fixed course, continuously and uninterruptedly,’ ” for the statutory period of five years. Moulton, 67 Mont. at 508, 218 P. at 1055 (quoting Violet v. Martin, 62 Mont. 335, 342, 205 P. 221, 223 (1922)). A “definite, fixed course” is “a course with clear and precise limits and of a permanent character.” Violet, 62 Mont. at 342, 205 P. at 223. “[T]he mere casual journeying over what might thereafter become the right of way for a public road could not constitute the trail, thereby made, a public highway.” Nolan, 58 Mont. at 173, 191 P. at 152; see also Montana Ore-Purchasing, 25 Mont. at 431, 65 P. at 421 (“[W]here the claim is founded upon use only, without color of title, it must appear that the use has been confined to the particular way for the full time of the prescribed limitation. Travel by the public generally over uninclosed land, but not confined to any particular way, will not inaugurate such an adverse claim as will presently ripen into a right which may be asserted against the owner.” (citation omitted)). As we stated in Nolan, “[i]t is inconceivable that it was the intention of Congress and of the Legislature to say that two or more persons crossing at random on each of a dozen trails across an open quarter section of land could constitute an acceptance of the government grant as to each of such trails, and the entire quarter section thus become but a series of irregular and divergent rights of way.” Nolan, 58 Mont. at 173, 191 P. at 152.
¶80 The Wisconsin Supreme Court reached a similar conclusion with respect to acceptance of the R.S. 2477 offer:
As said in [Streeter v. Stallnaker, 85 N.W. 47, 48 (Neb. 1901)]: “The statute was a standing offer of a free right of way over the public domain, and, as soon as it was accepted in an appropriate manner by the agents of the public or the public itself, a highway was established.” This seems to us a very fair and reasonable construction of the law. Mere fugitive trespasses by private persons over public lands, even though continued for a considerable time, do not meet the requirement. It has been held that it may be accepted by the state by passage of a general law [Wells v. Pennington County, 48 N.W. 305 (S.D. 1891)]; also by county authorities by surveying, platting, and marking out a road, though such acts were insufficient to constitute a laying out of a road under the general road law [Streeter, supra]; also by more *429 than 20 years’ adverse use by the public generally [McRose v. Bottyer, 22 P. 393 (Cal. 1889)]. It has never been held, however, that a few months’ desultory use by a few persons of a logging road or trail through the woods, with no acts by the public authorities of any kind, would constitute an acceptance of the offer made by the government.
Town of Rolling v. Emrich, 99 N.W. 464, 465 (Wis. 1904).
¶81 In the case at hand, it goes without saying that, thus far, there has been no evidence presented to establish by clear and convincing proof-or any other standard, for that matter (see Dissent, ¶ 130)-that the public pursued a definite and fixed course of a permanent character over the Cobban Placer, continuously and uninterruptedly, for five years prior to February 20,1892, and that the road was known and used as a highway common to all the people. Not even the Dissent argues that such evidence exists in the record before us. For this reason, and notwithstanding the Dissent’s contrary assertion in ¶ 107, the District Court did not err in denying summary judgment on OLR’s R.S. 2477 claim.
¶82 The Dissent, however, attempts to circumvent this conclusion by offering a fifth method, not identified in Nolan or any other precedent, for establishing a public highway under Montana law prior to 1892-namely, use of public land by an individual for no particular amount of time. This novel theory, entirely of the Dissent’s own making, is not supported by any legal authority whatsoever. Nor is it established factually in the record now before us.
¶83 The Dissent’s theory proceeds as follows. The R.S. 2477 offer was open-ended and self-executing. Dissent, ¶¶ 104, 105, 115, 121. Reese accepted the offer when he located the Plymouth Rock Placer in 1889 and the Plymouth Rock Extension Placer in 1890. Dissent, ¶¶ 119,135, 139. (The Dissent does not actually state that locating the Plymouth Rock Placer and the Plymouth Rock Extension Placer required the construction of a public highway across the Cobban Placer, but this appears to be the Dissent’s premise.) Reese used the road that is at issue in this case. Dissent, ¶¶ 110, 135. It was not necessary for Reese to use the road for any particular amount of time in order to accept the R.S. 2477 offer, since acceptance does not require any particular duration of use. Dissent, ¶¶ 115-124. It also was not necessary for anyone but Reese to use the road, since acceptance does not require use by more than one individual. Dissent, ¶¶ 119, 129, 139. Therefore, a public highway across the Cobban Placer arose by operation of law and existed by 1892 when Cobban and Lewis located the Cobban *430 Placer. Dissent, ¶¶ 106, 122, 135. Cobban and Lewis took title subject to this public highway. Dissent, ¶¶ 119, 122, 124, 131.
¶84 The most obvious flaw in the Dissent’s approach is its implausibility. If the R.S. 2477 offer could be accepted merely by an individual’s journeying across unenclosed public lands, then the entire countryside would consist of public highways. As noted above, this notion was rejected long ago, Nolan, 58 Mont. at 173, 191 P. at 152; Town of Rolling, 99 N.W. at 465, and the Dissent’s attempt to resurrect it is entirely unpersuasive.
¶85 That aside, the Dissent’s syllogism is legally unsustainable. It is certainly true that Congress did not specify a particular method or procedure for accepting the R.S. 2477 offer. Nor did Congress require that the offer be accepted by application to, or approval by, the federal government. See San Juan County, Utah v. United States, 503 F.3d 1163, 1168 (10th Cir. 2007); Sierra Club v. Hodel, 848 F.2d 1068, 1084 (10th Cir. 1988), overruled in part on other grounds, Village of Los Ranchos de Albuquerque v. Marsh, 956 F.2d 970, 973 (10th Cir. 1992) (en banc). Indeed, “the establishment of R.S. 2477 rights of way required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested.” Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 741 (10th Cir. 2005). However, these facts do not support the Dissent’s thesis that an individual could unilaterally establish a public highway without regard for the laws of the particular state in which the land was situated. To the contrary, courts uniformly held that acceptance of the R.S. 2477 offer required implementation of an authorized method for establishing a public highway under the laws of the state. See United States v. Pruden, 172 F.2d 503, 505 (10th Cir. 1949); Moulton v. Irish, 67 Mont. 504, 507, 218 P. 1053, 1054 (1923). In other words, “the grant referred to in R.S. 2477 became effective upon the construction or establishing of highways, in accordance with the state laws.” San Juan County, 503 F.3d at 1168 (emphasis added). The Dissent may choose to manufacture additional methods of creating public highways under Montana law in 1892 to suit its R.S. 2477 theory, but this approach cannot be sustained on the ground that the R.S. 2477 offer was “open-ended and self-executing” (see Dissent, ¶ 104).
¶86 The same applies to the Dissent’s attempt to omit any requirement of public use for the statutorily-specified period of time. Dissent, ¶¶ 115-124. The Dissent cites numerous cases from other *431 jurisdictions for the proposition that there is no specific period of use applicable to R.S. 2477. Dissent, ¶ 118.[2] Of course, the question of whether the R.S. 2477 offer was accepted depends on the laws of Montana governing the creation of public highways prior to 1892. Consequently, cases which articulate the highway laws of Kansas, Colorado, Nebraska, California, South Dakota, Oregon, New Mexico, and Washington, are not on point for purposes of determining whether the offer was accepted in relation to the Cobban Placer. The Dissent also relies on our statement in Moulton, 67 Mont. at 510, 218 P. at 1055, that “[w]e do not wish to be understood as holding that the continuous use of a road by the public for five years prior to July 1, 1895, was necessary to establish a public highway over unappropriated public lands in order to meet the requirements of the statute.” See Dissent, ¶ 117. This statement, however, must be understood in context. The proponents of the public highway in Moulton had “conceded . . . that, if the road in question ever became a public highway, it was created by use or prescription only.” Moulton, 67 Mont. at 507, 218 P. at 1054. Prior to July 1, 1895, the period for acquiring title by prescription was five years; thus, the case was tried on the theory that the use of the road at issue had to date back to July 1, 1890. Moulton, 67 Mont. at 508, 218 P. at 1054. Our statement, therefore, appears simply to be an acknowledgement that there were other methods of establishing public highways in Montana prior to 1895. See Nolan, 58 Mont. at 173, 191 P. at 152. The dictum does not stand for the proposition that public highways could be created by individual use for any random period of time.
¶87 I do agree with the Dissent’s suggestion that “prescription” is an inapt term for referring to the second method identified in Nolan of establishing a public highway-namely, “use by the public, for the period of the statute of limitations as to lands, of the exact route confined to the statutory width of a highway, later claimed to be a public highway,” Nolan, 58 Mont. at 173, 191 P. at 152. In Richter v. Rose, 1998 MT 165, 289 Mont. 379, 962 P.2d 583, we restated this quoted language from Nolan as “prescriptive use for the period of time *432 required by statute,” Richter, ¶ 28, and we have repeated this terminology in a number of subsequent cases, see McCauley v. Thompson-Nistler, 2000 MT 215, ¶ 21, 301 Mont. 81, ¶ 21, 10 P.3d 794, ¶ 21; Powell County v. 5 Rockin’ MS Angus Ranch, 2004 MT 337, ¶ 17, 324 Mont. 204, ¶ 17, 102 P.3d 1210, ¶ 17. Yet, while I conclude that “prescriptive” use is inapplicable to R.S. 2477,1 do not agree with the Dissent that requiring public use for the statutory time period is “counter-intuitive” as applied to R.S. 2477.
¶88 Prior to July 1, 1895, a highway could be established by prescription. State v. Auchard, 22 Mont. 14, 15-16, 55 P. 361, 362 (1898) (per curiam). The proponent had to present convincing evidence that the public pursued a definite and fixed course (i.e., a course with clear and precise limits and of a permanent character) over the way claimed, continuously for the time period set by law (five years). Auchard, 22 Mont. at 16, 55 P. at 362; Violet v. Martin, 62 Mont. 335, 342, 205 P. 221, 223 (1922). Moreover, the proponent had to demonstrate that the public use was with an assumption of control and right of use adverse to the landowner (i.e., without the owner’s permission). Violet, 62 Mont. at 342, 205 P. at 223. As the Dissent points out, public acceptance of the R.S. 2477 offer cannot be “adverse” to the United States. Dissent, ¶ 119. After all, R.S. 2477 was an offer; and use under R.S. 2477, therefore, was with the federal government’s permission. Thus, it is incorrect to suggest that acceptance of the offer by public use is a “prescriptive” use.
¶89 That said, the Dissent reasons that because the use is not adverse, it would be “counter-intuitive” to require the use to occur for any particular amount of time. Dissent, ¶ 119. On this point, I could not disagree more with the Dissent. For one thing, the Dissent offers no alternative objective basis for determining whether the character and extent of public use were sufficient to constitute an acceptance of the R.S. 2477 offer. The Dissent simply asserts that the location of a mining claim constitutes an acceptance of a right-of-way over adjoining public land. Notably, the Dissent provides no guidance or insight as to what specific aspects of locating a mining claim-here, the Plymouth Rock Placer and the Plymouth Rock Extension Placer-involve use by the public, sufficient in character and extent, to constitute an acceptance of the R.S. 2477 offer.
¶90 More importantly, the Dissent’s proposed new theory of acceptance flies in the face of 137 years of Montana precedent, without any rationale for changing course at this late date. Five years after R.S. 2477 was enacted, the Court in Robertson v. Smith, 1 Mont. 410 *433 (1871), interpreted the provision as follows:
[R.S. 2477] does not devote any particular portion of the public domain to a highway. It gives a general right to the public of a right of way for that purpose over public lands, and should be construed only to offer to devote to that use any lands belonging to the general government, not reserved for public uses, that the public might, through its proper officers, select. Until the public then accepts the offer made, and seeks to devote some particular portion of the public domain for a highway, no rights accrue to the public over such lands. See The City and County of San Francisco v. David Calderwood et al., 31 Cal. 585 [1867]. No rights could have accrued to the public in the land, upon any portion of Cement gulch, until either the legislature declared the tollroad up the same a highway, or until the said county commissioners sought to locate one there.
Robertson, 1 Mont. at 417 (emphases added). Thus, as interpreted by the Court in 1871, acceptance in Montana of the R.S. 2477 offer required action by the proper authorities.
¶91 Sixteen years later, the Court in Murray v. City of Butte, 7 Mont. 61, 14 P. 656 (1887), suggested that proof of “actual user and occupation” by the public could be sufficient to prove acceptance of the R.S. 2477 offer. See Murray, 7 Mont. at 67, 14 P. at 657. In so doing, the Court borrowed from the doctrine of dedication of land for public use, observing as follows: “ ‘There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation.’ ’’Murray, 7 Mont. at 67, 14 P. at 656-57 (emphasis in Murray) (quoting City of Cincinnati v. White’s Lessee, 31 U.S. 431, 6 Pet. 431 (1832)). The Court did not indicate what character and extent of public use was required; however, that question was arguably immaterial given that the particular proof offered by the City (and refused by the trial court) was testimony by one of the original locators of the mining claim to the effect that when he located the claim, there were “public” streets and highways (the ones at issue) already in existence. See Murray, 7 Mont. at 66, 14 P. at 656.
¶92 Next, in City of Butte v. Mikosowitz, 39 Mont. 350, 102 P. 593 (1909), we clarified the means of accepting the R.S. 2477 offer as follows:
The purpose of the congressional grant or dedication is to enable the public to acquire a roadway over public lands. The method by *434 which the roadway is to be established is not specified; and it must be held, therefore, that the Congress intended that any acts by which the public might acquire a public roadway over private property, other than by purchase, would be sufficient to constitute an acceptance of this grant or dedication.
Mikosowitz, 39 Mont. at 355, 102 P. at 595. With respect to the strip of land at issue, we concluded that the City’s evidence-which touched the character and extent of the use made of the disputed ground-supported the jury’s finding “that the strip had been used by the public generally as a roadway for five years or more, prior to July 1, 1895”; the evidence, thus, “was sufficient to establish a road by prescription, if the land over which it passed had been the subject of private ownership.” Mikosowitz, 39 Mont. at 354-55, 102 P. at 595. Hence, we effectively tethered acceptance of the R.S. 2477 offer to the methods of acquiring a public roadway over private property; and with respect to the particular factual circumstances of the case, we concluded that use of the disputed ground in the manner and to the extent necessary to establish a public road over private property by prescription was sufficient to accept the R.S. 2477 offer over public land.
¶93 The rule that acceptance of the R.S. 2477 offer by mere public use requires use for the statutorily-prescribed period has been repeated in numerous cases since Mikosowitz. See Nolan, 58 Mont. at 173-74, 191 P. at 152-53; Moulton, 67 Mont. at 507-08, 218 P. at 1054, 1055; Parker v. Elder, 233 Mont. 75, 77-78, 758 P.2d 292, 293 (1988); Richter v. Rose, 1998 MT 165, ¶ 28, 289 Mont. 379, ¶ 28, 962 P.2d 583, ¶ 28. In Nolan, we quoted approvingly the following language from Vogler v. Anderson, 89 P. 551 (Wash. 1907):
“The trial court based its judgment on the theory that the act of Congress granting a right of way for the construction of public highways over public lands not reserved for public use was a grant in praesenti, and became effective the moment the public began using the way as a public highway, and that it is not necessary that a way should be used for any specific time in order to constitute an acceptance of it as a grant under this statute. * * * But it was not said, or intended to be said, that a user for any lesser period than seven years would be sufficient for that purpose. On the contrary, to hold that a lesser period would suffice in this state would violate the terms of the grant made by Congress. The grant is for a right of way to establish a public highway, and a public highway must be established in some of the *435 ways provided by statute before the grant takes effect. * * * The shortest period allowed by statute to establish a highway by user in this state is seven years, * * * and no user short of this period can therefore be held to be an acceptance of the grant contained in the act of Congress cited.”
Nolan, 58 Mont. at 174-75, 191 P. at 153 (asterisks in original) (quoting Vogler, 89 P. at 552).
¶94 As for the character and extent of the use, as explained above, our cases have consistently required the proponent to prove that the use was, in fact, “public” and over a definite and fixed course. See e.g. Auchard, 22 Mont. at 16, 55 P. at 362 (“The road must be known and used as a highway common to all the people.” (citation and internal quotation marks omitted)); Montana Ore-Purchasing, 25 Mont. at 430-31, 65 P. at 421 (“[I]t must appear that the use has been confined to the particular way”; evidence that people “generally traveled” over open and unenclosed land “in any direction they chose” supports a conclusion that a public highway was not established.); Violet, 62 Mont. at 342-43, 205 P. at 223 (The alleged public road “must be so situated and so conditioned as to be available to the public, and the user-the travel-must be by the public generally, and it must be a way common to all.”); Moulton, 67 Mont. at 509, 218 P. at 1055 (observing that the proponents’ evidence failed “to establish the construction of a road or its continuous use by the public over a definite and fixed course”; the road at issue “was used by a few persons for hauling timber from the mountains where it ended,” it “did not lead to any town, settlement, post office or home,” and there was no evidence that the county had kept the road in repair or expended any money upon it); Parker, 233 Mont. at 76-77, 78, 758 P.2d at 292-93, 294 (use of the road across Elder’s property by Parker and her predecessors to access a homestead and ranch buildings was not “public” use); see also Barnard Realty Co. v. City of Butte, 48 Mont. 102, 107-08, 136 P. 1064, 1066 (1913); Warren v. Chouteau County, 82 Mont. 115, 119, 122-23, 265 P. 676, 678, 679 (1928); Maynard v. Bara, 96 Mont. 302, 307, 30 P.2d 93, 95 (1934); cf. Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 765 (10th Cir. 2005) (noting that for R.S. 2477 purposes, the Department of the Interior defined “highway” as follows: “A highway is a road over which the public at large have a right of passage and includes every thoroughfare which is used by the public, and is, in the language of the English books, ‘common to all the King’s subjects.’ ” (citations and some internal quotation marks omitted)).
*436 ¶95 In the face of this long line of precedent requiring convincing evidence that the alleged highway was used for the statutorily-prescribed period of time and that the character and extent of the use was “common to all the people,” the Dissent now argues that we should abandon our established, predictable approach in favor of a wholly arbitrary scheme under which use for no particular amount of time and by no particular number of persons is sufficient to accept the R.S. 2477 offer. As noted, the Dissent offers no guidelines other than its conclusory assertion that whatever Reese did in the course of locating the Plymouth Rock Placer and the Plymouth Rock Extension Placer, it constituted an acceptance.
¶96 This approach was not contemplated by any of our cases during the time period in which R.S. 2477 was in effect (1866-1976), and I strongly disagree with injecting such ambiguity and subjectivity into this area of law — not only because of the uncertainty it would engender with respect to land titles in this state, but also because the Dissent’s approach lacks any persuasive justification. As the Tenth Circuit aptly observed in Southern Utah Wilderness Alliance :
Both right-of-way holders and public and private landowners faced with potential R.S. 2477 claims have an interest in preservation of the status quo ante. That is best accomplished by not changing legal standards. In [Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir. 1988)], this Court observed that “R.S. 2477 rightholders, on the one hand, and private landowners and [the Bureau of Land Management] as custodian of the public lands, on the other, have developed property relationships around each particular state’s definition of the scope of an R.S. 2477 road.” 848 F.2d at 1082-83. The same can be said of the existence of an R.S. 2477 road.
Southern Utah Wilderness Alliance, 425 F.3d at 768; see also Southern Utah Wilderness Alliance, 425 F.3d at 765 (“This unanimity of interpretation over a great many years is entitled to weight.”). But even if we were to sever duration of use under R.S. 2477 from duration of use under the statutory period applicable to prescription, I could not subscribe to the complete and utter abandonment of any time period or clear guidelines for showing sufficient public use. None of the authorities cited by the Dissent (see ¶ 86 n. 2, supra) support such an approach.
¶97 Lastly, aside from the Dissent’s legally unsound position, the Dissent’s entire argument rests on factual assertions that are not established in the record before us. Indeed, it could fairly be said that *437 the Dissent engages in wild speculation as to events and activities that may have taken place during the late 1880s and early 1890s in the area which ultimately became the Cobban Placer, the Plymouth Rock Placer, and the Plymouth Rock Extension Placer. Most notable among those, the Dissent asserts repeatedly that the road depicted on MS 4200 was constructed no later than, and has been in use since, 1889 when Reese located the Plymouth Rock Placer. The Dissent also surmises that this was not simply the only road indicated on the maps and surveys in the record before us, as the District Court found, but was actually the “sole” means of access to the Plymouth Rock Placer and the Plymouth Rock Extension Placer.
¶98 There is no factual basis in the record for either of these assertions. No survey or map in the record shows the road prior to 1893; no records indicate who built the road and when; and there is no evidence establishing what route(s) Reese used to access the Plymouth Rock Placer. All we know at this point is that the road was in existence by 1893, when it was described in MS 4200’s field notes as a 6-foot-wide dirt road traversing the Cobban Placer. Nevertheless, the Dissent opines that the process of locating the Plymouth Rock Placer required the construction of a public highway. Assuming this to be true, however, we do not know whether Reese constructed the particular 6-foot-wide dirt road at issue; indeed, we do not know whether he continuously used “a definite, fixed course” over the Cobban Placer or instead accessed the Plymouth Rock Placer from different points of entry, including the public land that lay to the north.[3]
¶99 As for whether the road over the Cobban Placer was used by the public, Mineral Survey No. 5154 (dated September 1897) depicts the road terminating on the Plymouth Rock Extension Placer. In other words, the road was a dead end. Moreover, as the Landowners pointed out in their reply brief in support of their motion for summary judgment, there is no evidence in the record of a substantial mining *438 operation on either the Plymouth Rock Placer or the Plymouth Rock Extension Placer. Thus, even assuming the road existed as of 1889 when Reese located the Plymouth Rock Placer, the evidence presented by OLR thus far does not establish that that the road was “a way common to all” and that its use was “by the public generally.”[4] Violet, 62 Mont. at 342-43, 205 P. at 223; cf. Brimstone Min., Inc. v. Glaus, 2003 MT 236, ¶ 28, 317 Mont. 236, ¶ 28, 77 P.3d 175, ¶ 28 (holding that use of the road at issue by agents of the mining company for exploratory purposes and during relatively short periods of time in the summer months did not constitute continuous use by the public).
¶100 In concluding that a public highway exists, as a matter of law, over the Landowners’ properties pursuant to R.S. 2477, the Dissent has misstated both the law and the record. The question of whether the road across the Cobban Placer is a public highway is an issue properly addressed following the development of a complete factual record in the District Court and a correct application of the laws governing the creation of public highways in Montana prior to 1892.

 In its discussion of OLR’s R.S. 2477 theory, the District Court stated that “there has been no argument the Road was obtained by action of authorities, prescription, or partition of real property.” However, in its response in opposition to the Landowners’ motion for summary judgment, OLR did assert that “the grant of the [road across the Cobban Placer] by the federal government was accepted by public use of the road for at least five years before July 1,1895.”

 In particular, the Dissent cites Hughes v. Veal, 114 P. 1081 (Kan. 1911), Leach v. Manhart, 77 P.2d 652 (Colo. 1938), Nicolas v. Grassle, 267 P. 196 (Colo. 1928), Streeter v. Stalnaker, 85 N.W. 47 (Neb. 1901), McRose v. Bottyer, 22 P. 393 (Cal. 1889), Wells v. Pennington County, 48 N.W. 305 (S.D. 1891), Wallowa County v. Wade, 72 P. 793 (Or. 1903), Lovelace v. Hightower, 168 P.2d 864 (N.M. 1946), and Smith v. Mitchell, 58 P. 667 (Wash. 1899). These cases contrast with the approach in Arizona, which did not recognize acceptance by mere public use. See Tucson Consol. Copper Co. v. Reese, 100 P. 777 (Ariz. 1909).

 In this regard, I recognize that we may draw inferences from the record for purposes of evaluating OLR’s motion for summary judgment. However, as the Dissent is well aware, all reasonable inferences that might be drawn from the offered evidence are to be drawn in favor of the party opposing summary judgment. Farmers Co-op. Ass’n v. Amsden, LLC, 2007 MT 286, ¶ 24, 339 Mont. 445, ¶ 24, 171 P.3d 690, ¶ 24; Larsen v. Western States Ins. Agency, Inc., 2007 MT 270, ¶ 11, 339 Mont. 407, ¶ 11, 170 P.3d 956, ¶ 11; Stokes v. State ex rel. Montana Dept. of Transp., 2007 MT 169, ¶ 7,338 Mont. 165, ¶ 7, 162 P.3d 865, ¶ 7; Shelton v. State Farm Mut. Auto. Ins. Co., 2007 MT 132, ¶ 13, 337 Mont. 378, ¶ 13, 160 P.3d 531, ¶ 13. Here, the party opposing summary judgment on OLR’s R.S. 2477 theory is the Landowners; thus, all reasonable inferences that might be drawn from the offered evidence are to be drawn in the Landowners’ favor.

 In this regard, OLR’s proposal is not merely to provide public access to the Plymouth Rock Extension Placer. It is to provide public access to the Our Lady of the Rockies statue as well. In other words, OLR proposes essentially to extend the alleged public right-of-way, by way of a tram, to the top of the Continental Divide. Whether this use is within the scope of any R.S. 2477 highway that may exist over the Landowners’ properties is questionable. See Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 746 (10th Cir. 2005) (“[T]he scope of an R.S. 2477 right of way is limited by the established usage of the route as of the date of repeal of the statute,” i.e., as of October 21,1976.).